UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| MARY BRADY § | |
| § | |
| v. § | CIVIL NO. 4:22-CV-841-SDJ |
| § | |
| THE EVANGELICAL LUTHERAN § | |
| GOOD SAMARITAN SOCIETY § | |

# MEMORANDUM OPINION AND ORDER

This disability discrimination case arises from Plaintiff Mary Brady's denied application for residence at the Denton Village senior living community. Brady seeks to recover money damages and injunctive relief under both the Fair Housing Act (FHA) and Title III of the Americans with Disabilities Act (ADA). But she lacks standing to recover the requested injunctive relief—the only remedy available to her under Title III. And she has failed to establish key elements of her FHA claim: namely, that she is handicapped within the meaning of the statute and was discriminated against on that basis. The Court therefore finds that Brady's claims must be dismissed. The Court will afford her an opportunity to amend the complaint, however, to cure the deficiencies described in this order.

For these reasons, Defendant The Evangelical Lutheran Good Samaritan Society's (Good Samaritan Society) Motion to Dismiss for Failure to State a Claim, (Dkt. #7), is **GRANTED in part**.

## I. BACKGROUND

Brady applied for residence with the Denton Village senior living community in the summer of 2017. After spending a year and a half on the wait list, she toured duplexes at the community but could not find any that matched her needs. Some were

1

too small. Others were located too close to building construction that would exacerbate her health conditions. In addition to requesting a unit of acceptable size and location, Brady also informed the community that she would need a unit with a security system (which she could install herself) and carpeting due to her polyarthralgia, a joint condition.

Another year passed before a suitable residence became available. Brady accepted the unit and paid a deposit. But even then, her move-in date was delayed by several months because of complications surrounding construction on the unit's patio and the emerging COVID-19 pandemic. And in the weeks leading up to the move-in date, Brady learned from a previous tenant of an additional problem: an alleged sewage backup left standing water in the unit for a "substantial period of time." (Dkt. #1 ¶ 20). Brady requested that the unit be tested for mold (at her own expense) and otherwise remediated to alleviate the water damage. Brady alleges that she suffers from allergies and an unspecified autoimmune disease and that a specialist physician advised her that the latter condition "would not improve" from exposure to toxic mold. (Dkt. #1 ¶ 20).

The community's management allegedly declined these requests and rejected Brady from residing in the unit. After Brady retained counsel, the community agreed to put her at the head of the waitlist for the next available unit, behind only the community's current residents. But the community allegedly refused to install the carpeting that Brady requested or "take other measures" to put her in the same "position she would have been in if the [senior living community] had not wrongfully denied her request for a reasonable accommodation." (Dkt. #1 ¶ 22).

Following these events, Brady sued the community's operator, the Good Samaritan Society, asserting claims under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, and the Fair Housing Act, 42 U.S.C. § 3604. (Dkt. #1). In addition to compensatory damages, attorney's fees, and other expenses, she requests a permanent injunction requiring the Good Samaritan Society to afford her all reasonable accommodations needed to enjoy residence at the Denton Village community, including the following: (1) a spot at the top of the waitlist ahead of current residents, (2) the carpeting she had originally been promised, and (3) permission to install a security system in her unit. The Good Samaritan Society moved to dismiss the complaint for failure to state a claim upon which relief could be granted. (Dkt. #7). The motion is fully briefed and ripe for the Court's review. (Dkt. # 9, #10, #11, #17, #21, #22).

## II. LEGAL STANDARDS

The Good Samaritan Society seeks dismissal of the case for failure to state a claim under Rule 12(b)(6). The Court also evaluates whether the ADA claim should be dismissed sua sponte for lack of subject-matter jurisdiction. *See* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

**A. Legal Standard for Establishing the Court's Subject-Matter Jurisdiction**

The power of federal courts is circumscribed by the limits set forth in Article III of the Constitution. *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Article III legitimizes the use of judicial power "to declare the rights of

individuals and to measure the authority of governments" in the resolution of "cases" and "controversies." *Id.* For that reason, a federal court must dismiss a case for lack of subject-matter jurisdiction if the court lacks "the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quotation omitted). Because the "burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction," the "plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

**B. Legal Standard for Rule 12(b)(6) Motions**

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court has instructed that plausibility means "more than a sheer possibility," but not necessarily a probability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When assessing a motion to dismiss under Rule 12(b)(6), the facts pleaded are entitled to a presumption of truth, but legal conclusions that lack factual support are not entitled to the same presumption. *Id.* To determine whether the plaintiff has pleaded enough to "nudge[] [its] claims . . . across the line from conceivable to plausible," a court draws on its own common sense and judicial experience. *Id.* at 679–80 (quoting *Twombly*, 550 U.S. at 570). This threshold is surpassed when "a

4

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### III. DISCUSSION

The Court finds that Brady's claims under the FHA and Title III of the ADA must be dismissed. She lacks standing to recover injunctive relief: the only remedy available to her under Title III of the ADA. And she has failed to establish a prima facie case under the FHA. The Court will dismiss the complaint without prejudice to afford her an opportunity to cure the deficiencies described in this order.

**A. Brady Lacks Standing to Recover Under ADA Title III.**

The Court's jurisdiction extends only to active cases and controversies, not to hypothetical disputes. U.S. CONST. art. III, § 2; *TransUnion LLC v. Ramirez*, 549 U.S. ----, 141 S.Ct. 2190, 2203, 210 L.Ed. 2d 568 (2021). To recover in federal court, a plaintiff must therefore establish the three elements of constitutional standing: "injury in fact, causation, and redressability." *DeOtte v. Nevada*, 20 F.4th 1055, 1070 (5th Cir. 2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The plaintiff must establish these elements not only for the case, but also for each claim asserted and each form of relief sought. *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439, 137 S.Ct. 1645, 198 L.Ed.2d 64 (2017) (citations omitted); *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009).

Here, Brady has failed to establish the first element of constitutional standing as to her ADA Title III claim: that she suffered an injury in fact. Although Brady requests compensatory damages and injunctive relief, she can recover only the latter

5

under Title III. *See* 42 U.S.C. § 12188 (incorporating the remedial scheme set forth in 42 U.S.C. § 2000a-3(a)); *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F.App'x 180, 183 (5th Cir. 2015) (per curiam); *Van Winkle v. Pinecroft Ctr., L.P.*, No. CV H-16-2694, 2017 WL 3648477, at *4 (S.D. Tex. Aug. 23, 2017) ("Money damages are not available in a private action . . . under Title III of the ADA, but only injunctive relief and attorney's fees.").

To establish standing for injunctive claims, a plaintiff must demonstrate a "real and immediate threat of repeated injury"; that the plaintiff "suffered an injury in the past is not enough." *Deutsch v. Annis Enters., Inc.*, 882 F.3d 169, 173 (5th Cir. 2018) (per curiam) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). That is so because of the nature of the relief granted by injunctions: they afford "prospective relief" for ongoing and imminently anticipated harms. *Salazar v. Buono*, 559 U.S. 700, 714, 130 S.Ct. 1803, 176 L.Ed. 2d 634 (2010).

In the ADA and FHA context specifically, courts have required the plaintiff to establish with sufficient detail that she intends to return or move to the offending location. *Deutsch*, 882 F.3d at 174. For example, when a paraplegic customer visited a hair salon only once and failed to demonstrate any likelihood of visiting again, he lacked standing to recover under Title III of the ADA: the same statute at issue here. *Id.* at 172, 174 & n.2. On the other hand, a plaintiff established standing in an FHA race-based discrimination suit by showing a "substantial probability" that a public housing project would be completed, that she was on a waitlist for public housing, and that she intended to move into the completed project. *Jackson v. Okaloosa*

6

*County*, 21 F.3d 1531, 1537–39 (11th Cir. 1994) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)).

Here, Brady has failed to establish with sufficient detail that she faces a real and immediate threat of injury if denied the requested injunctive relief. The crux of her case is that she was refused reasonable accommodations to address mold and water damage at a particular unit in the Denton Village senior living community. But she does not allege any facts suggesting that she will again be offered residence in that unit. She alleges only that the Good Samaritan Society agreed to put her at the head of the waitlist for the next available unit (behind only the current residents). Even if these allegations establish a strong likelihood that Brady will again be admitted to the Denton Village, they do not establish a strong likelihood that she will need accommodations for her allergies and autoimmune issues or that she will be denied such accommodations. So, the principal relief sought in the complaint—that Brady be placed at the top of the waitlist ahead of current Denton Village residents—goes toward correcting a past wrong, not an anticipated one.

In addition to demanding a better position on the waitlist, Brady also demands all accommodations originally promised to her, including carpeting and permission to install a security system. As to the security system, she does not allege that anyone has threatened to deny that to her. And as to both the security system and the carpeting, she does not allege that the denial of these accommodations would invade a legally protected interest. Although she suggests the need for carpeting due to a joint condition, those vague and conclusory allegations do not establish a concrete

7

and particularized threat of injury. The Title III claim will be dismissed for lack of subject-matter jurisdiction.

**B. Brady Fails to State a Claim Under the FHA.**

Brady also fails to state a disability discrimination claim under the FHA. As an initial matter, the Court notes that similar standards apply to discrimination claims under the FHA as apply to discrimination claims under the ADA. *See Providence Behavioral Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 455 n.2 (5th Cir. 2018) (analyzing FHA reasonable accommodations claims together with reasonable accommodations claims under ADA Title II, which applies to governmental entities: "[t]he slight differences in the respective statutes do not impact the analysis for this case"); *Swanston v. City of Plano*, 557 F.Supp.3d 781, 789 (E.D. Tex. 2021) ("[B]ecause the Court does not find the minor distinctions between these statutes impactful on the following analysis, the Court addresses the FHA and ADA claims together."); *Bowman v. Bella Estancias, LLC*, No. 3:17-CV-0091-KC, 2018 WL 1115202, at *5 n.4 (W.D. Tex. Feb. 15, 2018) (collecting circuit court opinions evaluating FHA and ADA claims together).

Both statutes prohibit discrimination based on an impairment that substantially limits a major life activity: what the ADA refers to as a "disability" and the FHA refers to as a "handicap."[1] *See* 42 U.S.C. § 12102; 42 U.S.C. § 3602(h);

---

[1] Congress amended the ADA in 2008 to correct an overly narrow construction of the requirements for establishing a disability that had become widespread throughout the courts. *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 479 & n.5 (5th Cir. 2023), as revised (Aug. 4, 2023); *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016). Of note, the amendment clarified that episodic impairments or conditions in remission can be disabilities so long as they substantially limit a major life activity when active. *Mueck*, 75 F.4th at 479–80 (citing 42 U.S.C. § 12102(4)(D)).

*Swanston*, 557 F.Supp.3d at 791 n.8 ("The Court finds any distinction between a 'handicap' under the FHA and a 'disability' under the ADA irrelevant here."); *Bowman*, 2018 WL 1115202, at *5 ("The definition of disability under the ADA is functionally identical to the definition of 'handicap' under the FHA."). And both statutes define discrimination to include, among other things, a failure to make reasonable "accommodations" or "modifications" for a disabled individual. *See* 42 U.S.C. § 12182; 42 U.S.C. § 3604(f)(3)(B).

So, even though it does not reach the merits of the ADA claim, the Court draws both on ADA and FHA cases in concluding that the FHA claim must be dismissed. Dismissal is appropriate because Brady has not alleged a handicap or that the Good Samaritan Society discriminated against her based on it.

**i. The complaint does not allege a handicap.**

In her complaint, Brady fails to adequately allege that she is handicapped within the meaning of FHA. An actual handicap or disability under the federal discrimination laws means something more than an impairment. The impairment, either physical or mental, must substantially limit an individual's major life activities "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii); *Mueck*, 75 F.4th at 479 (quotations omitted). Major life activities include caring for oneself, performing manual tasks, walking, standing, breathing, concentrating, communicating, or working, among others. 42 U.S.C. § 12102(2).

To establish that an impairment substantially limits a major life activity, it is not enough for the plaintiff to name the impairment. The Supreme Court has never "recognized the concept of a *per se* disability . . . , no matter how serious the

9

impairment," but instead has required an "individualized assessment" based on the facts of the case. *Mueck*, 75 F.4th at 479 (quoting *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 223 (5th Cir. 2011)). For example, "partial blindness" does not count as a disability automatically.[2] *Green v. United Parcel Serv., Inc.*, 847 F.App'x 207, 211 (5th Cir. 2021) (citing *Still v. Freeport-McMoran, Inc.*, 120 F.3d 50, 52 (5th Cir. 1997)).

Consistent with these principles, federal courts have routinely dismissed disability discrimination claims when a plaintiff failed to establish that allergies or autoimmune issues substantially limited a major life activity. *See, e.g.*, *Mendez v. Ada Cmty. Libraries Bd. of Trs.*, No. 1:20-CV-00589-DCN, 2021 WL 2418004, at *3 (D. Idaho June 11, 2021) ("[H]aving allergies is not generally considered a disability under the ADA . . . ." (footnote omitted)); *Wren v. Midwestern State Univ.*, No. 7:18-CV-60-O-BP, 2019 WL 3099408, at *9 (N.D. Tex. June 25, 2019) (finding that the Plaintiff failed to allege that her allergies substantially limited a daily life activity), *adopted by* 2019 WL 3081849 (N.D. Tex. July 15, 2019); *Bowman v. Colonial Pipeline Co.*, No. 1:22-CV-287-WMR-CCB, 2023 WL 2908829, at *7 (N.D. Ga. Jan. 4, 2023) (same as to an autoimmune condition), *adopted in part by* 2023 WL 2908826 (N.D. Ga. Mar. 8, 2023). The same is true for disability discrimination claims based on joint conditions. *See, e.g.*, *Barnes v. Abdullah*, No. 11-CV-8168-RA, 2014 WL 3928944, at *2 (S.D.N.Y. Aug. 7, 2014).

---

[2] Admittedly, for certain impairments, the individualized inquiry will support a finding of disability in "virtually all cases." 29 C.F.R. § 1630.2(j)(3).

10

Here, the complaint alleges that Brady suffers from allergies, an unspecified autoimmune disease, and a joint condition, without establishing the severity of these impairments or how they limit her major life activities. The complaint merely alleges that these conditions are severe and that they "substantially impact her ability to live a normal life." (Dkt. #1 ¶ 16). Because these conclusory allegations fall short of demonstrating a handicap under the individualized assessment mandated by the Supreme Court, Brady's FHA discrimination claim must be dismissed.

### ii. The complaint does not allege discrimination based on a disability.

Beyond her failure adequately to allege a disability, Brady also fails to plausibly allege that the Good Samaritan Society discriminated against her because of it. To prevail in a discrimination case under a reasonable accommodation theory, a plaintiff must establish both that she requested an accommodation in "direct and specific terms" and that the defendant knew of the disability and of its consequential limitations. *See Windham v. Harris County*, 875 F.3d 229, 236–37 (5th Cir. 2017) (quotations omitted) (interpreting Title II of the ADA, which applies to governmental entities); *Chavez v. Aber*, 122 F.Supp.3d 581, 595 (W.D. Tex. 2015) (confirming a defendant cannot be liable under the FHA unless he knew or should have known of the plaintiff's disability) (citations omitted). The law does "not require clairvoyance" as to the plaintiff's needs.[3] *Windham*, 875 F.3d at 236–37 (quotations omitted).

Here, Brady's principal complaint is that she was denied reasonable accommodations that would have allowed her to move into the senior living

---

[3] In some situations, of course, the need for an accommodation will be open and obvious. *Windham*, 875 F.3d at 237 (citations omitted).

community despite her allergies and autoimmune issues—specifically, mold testing at her own expense and unit remediation. But the complaint does not allege facts demonstrating that the Good Samaritan Society knew of Brady's alleged disabilities. Instead, the complaint alleges only that the Good Samaritan Society refused to test for mold and remediate the unit because (after years of discussions) it was "dissatisfied with the delays" and would move to the next applicant on the list. (Dkt. #1 ¶ 21). That is consistent with the Good Samaritan Society refusing the requested accommodations based on a characteristic Brady "share[d] generally with the public" instead of any alleged disability. *Soniat v. Jackson*, No. 4:14-CV-122, 2014 WL 6968871, at *3 (E.D. Tex. Dec. 9, 2014), *adopted by* 2015 WL 1503650 (E.D. Tex. Mar. 31, 2015), *aff'd*, 628 F.App'x 292 (5th Cir. 2016).

In addition to complaining of denied accommodations at the original unit she accepted, Brady also complains that the Good Samaritan Society refused to install carpeting in any replacement unit. But this claim fails for the same reason as the claim for mold testing and remediation. The complaint does not establish that Brady requested this accommodation in direct and specific terms. And although it alleges that Brady needed the carpeting for a joint condition, the complaint's sparse and conclusory allegations do not demonstrate that the Good Samaritan Society knew of the need.

**C. Brady's Claims Should be Dismissed Without Prejudice.**

The Court will dismiss Brady's claims without prejudice. She has not yet filed an amended pleading. And it is possible that an amended pleading could cure the deficiencies described in this order. The Court notes, however, much of its analysis

addressing the FHA claim would apply to Brady's Title III ADA claim, too, if she can establish standing to support it.

The Title III claim also requires Brady to establish that the Good Samaritan Society owns, operates, or leases "a place of public accommodation." 42 U.S.C. § 12182(a). Many federal courts have concluded that places of public accommodation do not include apartment buildings, condominiums, or similar residential facilities. *See Desch v. Wheatley*, No. SA-08-CA-0922-FB, 2010 WL 11506404, at *5 (W.D. Tex. Jan. 19, 2010) ("[C]ondominiums, along with apartments, are not considered 'public accommodations' as that term is defined by the Act and therefore, do not fall within the purview of the ADA."), *adopted by* 2010 WL 11506405 (W.D. Tex. Mar. 18, 2010), *aff'd*, 421 F.App'x 394, 2011 WL 1331998, at *1 (5th Cir. 2011) (per curiam) (affirming the district court for "essentially the reasons" provided in the magistrate judge's report); *El-Bey v. Berkshire Hathaway Home Servs.*, No. 4:22-CV-3528, 2023 WL 5488433, at *3 (S.D. Tex. Aug. 24, 2023) (collecting cases).[4]

If she files an amended pleading, Brady should ensure that her allegations establish each element of her claims and standing to assert them.

---

[4] *See also Regents of Mercersburg Coll. v. Republic Franklin Ins. Co.*, 458 F.3d 159, 165 n.8 (3d Cir. 2006) ("We agree that residential facilities such as apartments and condominiums are not transient lodging and, therefore, not subject to ADA compliance."); *Whitaker v. W. Vill. Ltd. P'ship*, No. 3:03-CV-411-P, 2004 WL 2008502, at *2 (N.D. Tex. Sept. 8, 2004) ("[R]esidential units are not places of public accommodation as defined by the ADA . . . ."); *Ricks v. DMA Cos.*, No. 1:22-CV-773-LY-SH, 2022 WL 4241306, at *2 (W.D. Tex. Aug. 8, 2022) ("Although courts are to liberally interpret the ADA, federal district courts have found repeatedly that apartments and condominiums are not places of public accommodation.").

## IV. Conclusion

The complaint fails to establish the elements of an FHA claim or standing to recover under the ADA. Therefore, the Court **ORDERS** as follows:

Defendant's Motion to Dismiss for Failure to State a Claim, (Dkt. #7), is **GRANTED in part**.

Plaintiff's claims for injunctive relief and for violations of Title III of the Americans with Disabilities Act are **DISMISSED without prejudice** for lack of subject-matter jurisdiction.

Plaintiff's claims under the Fair Housing Act, and any remaining claims, are **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

It is further **ORDERED** that Plaintiff has **fourteen days** from the date of this order to amend her Complaint.

**So ORDERED and SIGNED this 2nd day of October, 2023.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE