IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MARY BRADY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-cv-841-SDJ |
| | § | |
| THE EVANGELICAL LUTHERAN | § | |
| GOOD SAMARITAN SOCIETY, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S AMENDED COMPLAINT**

Mary Brady, complaining of and against the Evangelical Lutheran Good Samaritan

Society ("ELGSS"), alleges as follows:

**I.      INTRODUCTION**

1.      Mary Brady is an individual with chronic autoimmune disease and allergies so severe that

they substantially impact her ability to live a normal life, when triggered, including her ability to

breathe, to eat, to sleep, to walk, to lift, and to work.  She must consequently take great care to

ensure that her living arrangements are as free from triggering allergens as possible.

2.      Given Ms. Brady's recent health difficulties, her current living arrangements are no

longer safe, suitable, or healthy for her.  Consequently, she applied in September 2017 to reside

in a senior living residence operated by Defendant ELGSS at Denton Village in Denton, Texas.

Denton Village offers a variety of services that are essential to Plaintiff in light of her health

difficulties and the continued deterioration of her health, including, but not limited to, on-site

healthcare assistance.  She may also require additional services if her health continues to

deteriorate.

3.      In early 2018, after waiting about half a year on the waiting list, Plaintiff began touring

duplexes at Denton Village, but had to decline those she was shown as either too small, based on

the recommendations of her physical therapist, or too close to building construction that would

likely exacerbate her health difficulties.  During this time, Plaintiff discussed with Denton

Village management the fact that she would require a security system, which she herself would

supply, and carpeting in light of her polyarthralgia.

4.      Over the next two years Plaintiff waited for a suitable residence to become available.

Denton Village finally was able to offer her such a residence in March 2020.  She accepted it and

paid her deposit.  She confirmed her need for carpeting and a security system.  Denton Village

indicated it would get bids on finishing  construction of the residence's enclosed patio at

Plaintiff's expense.  Due to a combination of issues with this construction and with the emerging

COVID-19 pandemic, Denton Village and Plaintiff mutually agreed that her move should be

delayed until the fall of 2020.

5.      In September 2020, having been informed by a previous tenant of a sewer backup that

had left standing water for a substantial period of time in the residence into which Plaintiff was

about to move, she requested from Denton Village the accommodation of testing the residence

for mold at her own expense.  Plaintiff had been advised by a specialist physician that her auto

immune disease would not improve if she had exposure to toxic mold.

6.      In October 2020, after a series of communications with Plaintiff, Denton Village denied

Plaintiff's request for an accommodation, refusing not only to remediate the relevant conditions

in the residence, but also even to test for toxic mold at all.  On the contrary, Denton Village

indicated that it was dissatisfied with the delays and that it would move on to the next applicant

on the waiting list.  Despite Plaintiff's unambiguous communications of information concerning

her severe allergies and autoimmune disorder, Denton Village refused her requests for reasonable and necessary accommodations.  Denton Village sent its formal rejection letter to Plaintiff on October 13, 2020.

7.      After Plaintiff retained the undersigned counsel to represent her, Defendant agreed only to put Plaintiff at the head of its Denton Village waiting list for her desired housing, but it would leave her behind current Denton Village residents who would take precedence in moving into that housing if they so chose.  Defendant also declined to install the carpeting and to take other measures that would have put Plaintiff in the position she would have been if Defendant had not wrongfully denied her request for a reasonable accommodation.  It also continued to deny her the accommodations she needs to move into the residence safely in light of her disabilities.  In correspondence with Defendant's counsel, Plaintiff's attorney explained Plaintiff's disabilities and the reasons for her need for the accommodations at issue.  Defendant's counsel did not request further information concerning Plaintiff's disabilities after this series of correspondence. Meanwhile, Plaintiff's health continues to decline and she has not been able to locate housing that would suit her health needs as would Denton Village, if it granted her request for reasonable accommodations.

8.      The Fair Housing Act (the "FHA") prohibits, among other things, "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a person with a disability] equal opportunity to use and enjoy a dwelling."  42 U.S.C. 3604(f)(3)(B).

9.      Title III of the Americans with Disabilities Act (the "ADA") forbids discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ."  42 U.S.C.

§ 12182(a).  Discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]"  42 U.S.C. § 12182(b)(2)(A)(ii).  It imposes compliance obligations on any person who "owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  Defendant owns and operates places of public accommodation within Denton Village and, by refusing to make reasonable modification in its policies, practices, and procedures, has failed to afford the advantages and privileges off those public accommodations to Plaintiff.  Making such reasonable modifications would not have constituted a fundamental alteration or undue burden on Defendant.

10.     Defendant wrongfully denied Plaintiff's request for reasonable accommodations in October 2020, and its wrongful actions continue today.  Plaintiff has still not been able to locate any alternative to Denton Village as a place that can meet her varied needs.  She still requires the accommodations that she requested in her original interactions with Denton Village, as described above.  She has every intention of moving into Denton Village, if she is granted the accommodations she requested and still requires.  Denton Village has only a certain number of residences that are sufficiently spacious and equipped to accommodate Plaintiff's needs.  She would require the accommodation of testing for mold at her own expense if Denton Village offered her the same residence as previously or one similarly problematic with respect to the potential for exposure to toxic mold.  Because of her conditions, she would need the ability to ensure that any Denton Village residence was as free as possible from other triggers as well.  She

4

would need the carpeting in light of her polyarthralgia.  Because of her deteriorating health, she cannot wait on a waiting list to repeat the application process due to Defendant's refusal to grant her reasonable and necessary accommodations before.

11.     Consequently, Plaintiff has no choice but to seek intervention from this Court and to request that this Court enjoin Defendant from continuing to deny her the accommodations she requires to have an equal opportunity to use and to enjoy the housing of her choice in Denton Village, including (1) inclusion at the head of the waiting list for Unit #60 or an equal or superior unit, including priority over current Denton Village residents, (2) carpeting similar or superior to that agreed upon between the parties in and before October 2020, (3) the right to include a security system on the premises to the degree agreed upon between the parties in and before October 2020, and (4) any other accommodations or modifications that were agreed upon by the parties in and before October 2020 or that would have been made available to Plaintiff if Plaintiff had been able to move into Denton Village in October 2020.  She also seeks an award of compensatory damages based on Defendant's intentional discrimination.

## II.      PARTIES

12.     Plaintiff Mary Brady is an individual with disabilities.  She resides in Collin County.

13.     Defendant Evangelical Lutheran Good Samaritan Society is a 501(c)(3) organization headquartered in South Dakota.

## III.      JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States.

15.     Plaintiff's discrimination claims are brought pursuant to the FHA, 42 U.S.C. § 3604(f)(3), and Title III of the ADA, 42 U.S.C. § 12182.

16.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

**IV.    BACKGROUND FACTS**

17.    Mary Brady is an individual with chronic autoimmune disease and allergies so severe that they substantially impact her ability to live a normal life, when triggered, including her ability to breathe, to eat, to sleep, to walk, to lift, and to work.  Plaintiff has a number of diagnoses, some of which dramatically impact her autoimmune system.  She takes dozens of medications to address her autoimmune disorder and allergies.  She must follow a completely structured regimen the entire day.  She must carefully monitor everything she wears and everything she puts on her skin, as well as all foods she consumes or chemicals in her environment.  She cannot eat normal food and must process her own meals to such a degree that it takes very significant amounts of time.  Eating is such a laborious process that she can only eat at most two meals a day and, if anything disrupts her normal routine, only one.  She has had trouble with malnutrition as a consequence.  She must keep any travel to an absolute minimum as any disruption of her routine will inevitably result in considerable illness.  Because of her need to find new housing, she recently traveled for the first time in five years, hoping to find an appropriate senior living residence out of state.  She found no such residence, but came down with the inevitable illness in addition to the fact that, because she had disrupted her routine and could eat very little while traveling, she lost weight and exacerbated her already-present difficulties with malnutrition.  Her skin is so fragile that it is prone to almost constant injury, such that she must wear only special clothing adapted for the purpose.  Her skin causes her such intense pain that she can only get to sleep by approximately 4:00 a.m. at the earliest on any given night and can only sleep in her chair.  She is constantly dealing with the resultant sleep loss.  She has sarcopenia which makes it

extremely difficult to deal with a variety of self-care issues, such that she has injured herself in the attempt and is now dealing with two bulging discs in her back and lumbar strain.  Any deviation from her routines make these many issues even worse than they already are.  Likewise, any exposure to triggering allergens or to anything that might implicate her autoimmune disorder will cause substantial pain and illness.  She must consequently take great care to ensure that her living arrangements are as free from triggering allergens or other problematic triggers as possible.

18.     Given Ms. Brady's recent health difficulties, her current living arrangements are no longer safe, suitable, or healthy for her, despite the fact that she has resided there for over thirty years.  Consequently, she applied in September 2017 to reside in a senior living residence operated by Defendant ELGSS at Denton Village in Denton, Texas.  She chose Denton Village in part because her food allergies are so severe that she must cook her restricted diet herself and Denton Village is one of the few senior living organizations that does not require its residents to purchase meal plans.  Denton Village also offers a variety of services that are essential to Plaintiff in light of her health difficulties and the continued deterioration of her health, including, but not limited to, on-site healthcare assistance.  She may also require additional services if her health continues to deteriorate.  She paid $350 just to gain a place on the waiting list, as Denton Village had no openings at the time.

19.     In early 2018, after waiting about half a year on the waiting list, Plaintiff began touring duplexes at Denton Village, but had to decline some of those she was shown as too small, based on the recommendations of her physical therapist.  One duplex, #60, she declined as right next to the busy driveway and as too close to building construction that would likely exacerbate her health difficulties.  She was told by Denton Village management that others had declined #60 for

the same reasons.  During this time, Plaintiff discussed with Denton Village management the fact

that she would require a security system, which she herself would supply, and carpeting in light

of her polyarthralgia.  During November and December of 2019, Plaintiff corresponded with

Denton Village personnel regarding her allergies and autoimmune disorder, providing sufficient

information for such personnel to grasp the extent and impact of these conditions.

20.     Over the next two years Plaintiff waited for a suitable residence to become available.

Meanwhile, her health continued to decline as a result of auto immune disease and injuries from

a serious fall.  Denton Village finally was able to offer her a residence in March 2020.  Although

the residence was the same #60 she had previously declined, she accepted it in light of her

increasingly urgent need for senior living housing and paid her deposit.  She confirmed her need

for carpeting and a security system.  Denton Village indicated it would get bids on finishing

construction of the residence's enclosed patio at Plaintiff's expense.  Due to a combination of

issues with this construction and with the emerging COVID-19 pandemic, Denton Village and

Plaintiff mutually agreed that her move should be delayed until the fall of 2020.

21.     In September 2020, having been informed by a previous tenant of a sewer backup that

had left standing water for a substantial period of time in the residence into which Plaintiff was

about to move, she requested from Denton Village the accommodation of testing the residence

for mold at her own expense.  Plaintiff had been advised by a specialist physician that her auto

immune disease would not improve if she had exposure to toxic mold.  Plaintiff located a

reputable mold company and was prepared to address the testing issue without expense or burden

to Denton Village.

22.     Nevertheless, in October 2020, after a series of communications with Plaintiff during the

course of which Plaintiff unambiguously communicated the nature of her allergens and

autoimmune disorder, Denton Village denied Plaintiff's request for an accommodation, refusing

not only to remediate the relevant conditions in the residence, but also even to test for toxic mold

at all.  On the contrary, Denton Village indicated that it was dissatisfied with the delays and that

it would move on to the next applicant on the waiting list.  Denton Village sent its formal

rejection letter to Plaintiff on October 13, 2020.  On October 23, 2020, Plaintiff spoke by

telephone with an administrator for Denton Village who admitted that Defendant did not want to

pursue Plaintiff's application any further after she sought a mold test as an accommodation, even

though she was willing to pay for it herself, because Denton Village simply did not want to

address mold issues.  He further indicated that Denton Village had already rented the residence

to another applicant.

23.      After Plaintiff retained the undersigned counsel to represent her, Defendant agreed

through counsel only to put Plaintiff at the head of its Denton Village waiting list for her desired

housing, but it would leave her behind current Denton Village residents who would take

precedence in moving into that housing if they so chose.  Defendant also declined to install the

carpeting originally offered to Plaintiff and to take other measures that would have put Plaintiff

in the position she would have been if Defendant had not wrongfully denied her request for a

reasonable accommodation.  It also continued to deny her the accommodations she needs to

move into the residence safely in light of her disabilities. Meanwhile, Plaintiff's health continues

to decline and she has not been able to locate housing that would suit her health needs as would

Denton Village, if it granted her request for reasonable accommodations.

24.      Defendant wrongfully denied Plaintiff's request for reasonable accommodations in

October 2020, and its wrongful actions continue today. Plaintiff has still not been able to locate

any alternative to Denton Village as a place that can meet her varied needs.  She still requires the

accommodations that she requested in her original interactions with Denton Village, as described above.  She has every intention of moving into Denton Village, if she is granted the accommodations she requested and still requires.  Denton Village has only a certain number of residences that are sufficiently spacious and equipped to accommodate Plaintiff's needs.  She would require the accommodation of testing for mold at her own expense if Denton Village offered her the same residence as previously or one similarly problematic with respect to the potential for exposure to toxic mold.  Because of her conditions, she would need the ability to ensure that any Denton Village residence was as free as possible from other triggers as well.  She would need the carpeting in light of her polyarthralgia.  Because of her deteriorating health, she cannot wait on a waiting list to repeat the application process due to Defendant's refusal to grant her reasonable and necessary accommodations before.

25.    Consequently, Plaintiff has no choice but to seek intervention from this Court and to request that this Court enjoin Defendant from continuing to deny her the accommodations she requires to have an equal opportunity to use and to enjoy the housing of her choice in Denton Village, including (1) inclusion at the head of the waiting list for Unit #60 or an equal or superior unit, including priority over current Denton Village residents, (2) carpeting similar or superior to that agreed upon between the parties in and before October 2020, (3) the right to include a security system on the premises to the degree agreed upon between the parties in and before October 2020, and (4) any other accommodations or modifications that were agreed upon by the parties in and before October 2020 or that would have been made available to Plaintiff if Plaintiff had been able to move into Denton Village in October 2020.  She also seeks an award of compensatory damages based on Defendant's intentional discrimination.

## COUNT I:

## VIOLATIONS OF THE FAIR HOUSING ACT

26.     Plaintiff incorporates by reference paragraphs 1-25 as set forth above.

27.     The residence for which Plaintiff applied in Denton Village and which she ultimately

accepted is a "dwelling" within the meaning of 42 U.S.C. § 3602(b).

28.     Plaintiff is a person with a disability or "handicap" within the meaning of 42 U.S.C.

§ 3602(h).[1]  Defendant knew of the nature and extent of this disability when engaged in the

complained-of acts or omissions.

29.     Defendant's actions described above constitute a refusal to make reasonable

accommodations in rules, policies, practices, or services when such accommodations may be

necessary to afford a person an equal opportunity to use and enjoy a dwelling, in violation of the

FHA, 42 U.S.C. § 3604(f)(3)(B).

30.     As a result of  Defendant's conduct, Plaintiff is an aggrieved person as defined in 42

U.S.C. § 3602(i) and has suffered injuries as a result of Defendant's actions.

31.     Defendant's conduct has caused Plaintiff irreparable harm and continues to cause her

irreparable harm on an ongoing basis.

32.     The accommodations requested by Plaintiff are both reasonable and necessary to avoid

the irreparable harm referenced above and to provide Plaintiff an equal opportunity to use and to

enjoy the housing of her choice.

33.     Providing the accommodations requested by Plaintiff will not impose an undue burden on

Defendant or require it to alter any activity or service in a fundamental manner.

---

[1] The term "handicap" is antiquated and widely considered pejorative.  The term "disability" is more widely accepted and is used throughout this Complaint.

34.     Enjoining Defendant from continuing to refuse the accommodations requested by

Plaintiff will impose no hardship on Defendant and will not disserve the public interest, but will

rather serve that interest.  Plaintiff has no adequate remedy at law to address the irreparable harm

which she has suffered and continues to suffer.

35.     Defendant's wrongdoing was and is intentional, and Plaintiff is entitled to compensatory

damages as a remedy.

**COUNT II:**

**VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT**

36.     Plaintiff incorporates by reference paragraphs 1-35 as set forth above.

37.     Plaintiff is a person with a disability within the meaning of 42 U.S.C. §§ 12101 and

12182.

38.     Defendant provides and operates places of public accommodation with Denton Village,

particularly in light of the services it offers that she requires for maintenance of her health.  If

unable to reside at Denton Village, Plaintiff would be deterred from availing herself of these

critical services that if offers.

39.     Defendant's actions and omissions described above constitute a failure to make

reasonable modifications in policies, practices, or procedures, when such modifications are

necessary to afford "services, facilities, privileges, advantages, or accommodations to individuals

with disabilities" in violation of the ADA, 42 U.S.C. § 12182(a), (b), and especially (b)(2)(A)(ii).

Making the requested modification would not fundamentally alter the nature of any good,

facility, privilege, advantage, or accommodation being offered and would not result in an undue

burden.

40.     Defendant's conduct has caused Plaintiff irreparable harm and continues to cause her irreparable harm on an ongoing basis.

41.     The accommodations requested by Plaintiff are both reasonable and necessary to avoid the irreparable harm referenced above and to provide Plaintiff the privileges, advantages, and accommodations which others enjoy and which she requires.

42.     Enjoining Defendant from continuing to refuse to grant the modification requested by Plaintiff will impose no hardship on Defendant and will not disserve the public interest, but will rather serve that interest.  Plaintiff has no adequate remedy at law to address the irreparable harm which she has suffered and continues to suffer.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A.     That this Court assume jurisdiction of this cause;

B.     That this Court enter a permanent injunction enjoining Defendant from continuing to deny Plaintiff the accommodations she requires to have an equal opportunity to use and to enjoy the housing of her choice in Denton Village, including (1) inclusion at the head of the waiting list for Unit #60 or an equal or superior unit, including priority over current Denton Village residents, (2) carpeting similar or superior to that agreed upon between the parties in and before October 2020, (3) the right to include a security system on the premises to the degree agreed upon between the parties in and before October 2020, and (4) any other accommodations or modifications that were agreed upon by the parties in and before October 2020 or that would have been made available to Plaintiff if Plaintiff had been able to move into Denton Village in October 2020.

C.      That this Court award Plaintiff compensatory damages based on Defendant's

intentional discrimination;

D.      That this Court award Plaintiff her costs and fees, including reasonable attorneys'

fees; and

E.      That this Court grant such additional relief as it deems equitable and just.


Dated:  October 16, 2022

                                        Respectfully Submitted,


                                        ___/s/ Mark Whitburn_____
                                        Mark Whitburn
                                        Texas Bar No. 24042144
                                        Sean Pevsner
                                        Texas Bar No. 24079130
                                        Whitburn & Pevsner, PLLC
                                        2000 E. Lamar Blvd., Suite 600
                                        Arlington, Texas 76006
                                        Tel: (817) 653-4547
                                        Fax: (817) 653-4477
                                        mwhitburn@whitburnpevsner.com


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been served on counsel of record for

Defendant in this matter on October 16, 2023, through the electronic filing service, as follows:

Chastiti N. Horne
Joshua C. Anderson
Horne Rota Moos, LLP
2777 Allen Parkway, Suite 1200
Houston, Texas 77019-2141

                                        ___/s/ Mark Whitburn_____

14