IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MARY BRADY | § | |
| | § | |
| V. | § | C.A. NO. 4:22-CV-841 |
| | § | |
| THE EVANGELICAL LUTHERAN | § | JURY REQUESTED |
| GOOD SAMARITAN SOCIETY | § | |

## DEFENDANT'S MOTION TO DISMISS

TO THE HONORABLE SEAN D. JORDAN, UNITED STATES DISTRICT JUDGE:

The Evangelical Lutheran Good Samaritan Society ("Defendant") files this Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1, 6).

## INTRODUCTION

Plaintiff originally filed this lawsuit on October 2, 2022. (Doc. 1). Per her Original Complaint, this lawsuit arises out of Plaintiff's alleged application for residence at a senior living facility operated by Defendant. (Doc. 1, ¶ 2). Plaintiff alleged that Defendant wrongfully denied Plaintiff's request for reasonable accommodations under the Fair Housing Act, *see* 42 U.S.C. 3604(f)(3)(B), as well as refused to make reasonable modifications in violation of the Americans with Disabilities Act, *see* 42 U.S.C. § 12182(a). (*See id*. at ¶ 24-41).

On January 20, 2023, Defendant filed its Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6). (*See* Doc. 7). On October 2, 2023, this Court issued its Memorandum Opinion and Order on Defendant's motion to dismiss. (*See* Doc. 24). This Court granted-in-part Defendant's motion to dismiss, but granted leave for Plaintiff to amend her complaint within fourteen days. (*See id*.). On October 16, 2023, Plaintiff filed her Amended Complaint. (Doc. 26). Defendant now moves to dismiss Plaintiff's Amended Complaint.

## ALLEGATIONS IN PLAINTIFF'S AMENDED COMPLAINT

There are minimal new factual allegations in Plaintiff's Amended Complaint.  Again, this lawsuit arises out of Plaintiff's alleged application for residence at a senior living facility operated by Defendant.  (Doc. 25, ¶ 2).  Plaintiff alleges that she "is an individual with chronic autoimmune disease and allergies so severe that they substantially impact her ability to live a normal life, when triggered, including her ability to breathe, to eat, to sleep, to walk, to lift, and to work." (*Id*. at ¶ 17).  She then provides the following description:

> Plaintiff has a number of diagnoses, some of which dramatically impact her autoimmune system. She takes dozens of medications to address her autoimmune disorder and allergies. She must follow a completely structured regimen the entire day. She must carefully monitor everything she wears and everything she puts on her skin, as well as all foods she consumes or chemicals in her environment. She cannot eat normal food and must process her own meals to such a degree that it takes very significant amounts of time. Eating is such a laborious process that she can only eat at most two meals a day and, if anything disrupts her normal routine, only one. She has had trouble with malnutrition as a consequence. She must keep any travel to an absolute minimum as any disruption of her routine will inevitably result in considerable illness. Because of her need to find new housing, she recently traveled for the first time in five years, hoping to find an appropriate senior living residence out of state. She found no such residence, but came down with the inevitable illness in addition to the fact that, because she had disrupted her routine and could eat very little while traveling, she lost weight and exacerbated her already-present difficulties with malnutrition. Her skin is so fragile that it is prone to almost constant injury, such that she must wear only special clothing adapted for the purpose. Her skin causes her such intense pain that she can only get to sleep by approximately 4:00 a.m. at the earliest on any given night and can only sleep in her chair. She is constantly dealing with the resultant sleep loss. She has sarcopenia which makes it extremely difficult to deal with a variety of self-care issues, such that she has injured herself in the attempt and is now dealing with two bulging discs in her back and lumbar strain. Any deviation from her routines make these many issues even worse than they already are. Likewise, any exposure to triggering allergens or to anything that might implicate her autoimmune disorder will cause substantial pain and illness. She must consequently take great care to ensure that her living arrangements are as free from triggering allergens or other problematic triggers as possible.

(*Id.*).

Allegedly because of this, Plaintiff applied in September 2017 to reside in Defendant's senior living facility.  (*See id.* at ¶ 18).  "She chose Denton Village in part because her food allergies are so severe that she must cook her restricted diet herself and Denton Village is one of the few senior living organizations that does not require its residents to purchase meal plans." (*Id.*).

In 2018, Plaintiff was shown a number of units at Defendant's facility but declined several of these because they were too small for her needs. (*See id.*).  She also declined unit #60 because it was next to a busy driveway, as well as close to ongoing construction.  (*See id.* ¶ 19). She further claims that during November and December of 2019, she corresponded with Defendant's personnel regarding her allergies and autoimmune disorder, "providing sufficient information for such personnel to grasp the extent and impact of these conditions."  (*Id.*).

Plaintiff continued to wait for an available unit for the next two years, during which time her health continued to decline as a result of her autoimmune disease and injuries from a fall. (*See id.* at ¶ 20).  Defendant re-offered unit #60 to Plaintiff in March 2020, which she accepted. (*See id.*).  Plaintiff wished to install new carpet and a security system in the unit at her expense. (*See id.*).  "Due to a combination of issues with the construction and with the emerging COVID-19 pandemic, [Defendant] and Plaintiff mutually agreed that her move should be delayed until the fall of 2020."  (*Id.*).

In September 2020, Plaintiff claims to have learned of a sewer backup that resulted in standing water in unit #60.  (*See id.* ¶ 21).  Plaintiff then requested to test unit #60 for mold at her own expense because she "had been advised by a specialist physician that her autoimmune disease would not improve if she had exposure to toxic mold."  (*See id.*).  "[I]n October 2020, after a series of communications with Plaintiff during the course of which Plaintiff

unambiguously communicated the nature of her allergens and autoimmune disorder, [Defendant] denied Plaintiff's request for an accommodation, refusing not only to remediate the relevant conditions in the residence, but also even to test for toxic mold at all.   On the contrary, [Defendant] indicated that it was dissatisfied with the delays and that it would move on to the next applicant on the waiting list."  (*Id*. ¶ 22).  A formal rejection letter was thereafter sent to Plaintiff on October 13, 2020.  (*See id*.).  "On October 23, 2020, Plaintiff spoke by telephone with an administrator for [Defendant] who admitted that Defendant did not want to pursue Plaintiff's application any further after she sought a mold test as an accommodation, even though she was willing to pay for it herself, because [Defendant] simply did not want to address mold issues."  (*Id*.).  Unit #60 has since been rented to another applicant.  (*See id*.).

After Plaintiff retained counsel, Defendant agreed to place Plaintiff at the top of the waiting list for new residents, but behind current residents who wish to change units.  (*See id*. ¶ 23).  "Defendant also declined to install the carpeting originally offered to Plaintiff and to take other measures that would have put Plaintiff in the position she would have been if Defendant had not wrongfully denied her request for a reasonable accommodation."  (*Id*.).

Finally, Plaintiff claims she "has still not been able to locate any alternative to Denton Village as a place that can meet her varied needs."  (*Id*. at ¶ 24).  She still requires the various accommodations she previously requested and has "every intention" of moving into Defendant's facility if granted these accommodations.  (*See id*.).

Based upon these allegations, Plaintiff asserts that Defendant wrongfully denied Plaintiff's request for reasonable accommodations under the Fair Housing Act ("FHA"), *see* 42 U.S.C. 3604(f)(3)(B), as well as refused to make reasonable modifications in violation of the Americans with Disabilities Act ("ADA"), *see* 42 U.S.C. § 12182(a).  (*See id*. at ¶ 26-42).  As

part of her requested relief, Plaintiff seeks "this Court enter a permanent injunction enjoining Defendant from continuing to deny Plaintiff the accommodations she requires to have an equal opportunity to use and to enjoy the housing of her choice in [Defendant's facility], including (1) inclusion at the head of the waiting list for Unit #60 or an equal or superior unit, including priority over current Denton Village residents, (2) carpeting similar or superior to that agreed upon between the parties in and before October 2020, (3) the right to include a security system on the premises to the degree agreed upon between the parties in and before October 2020, and (4) any other accommodations or modifications that were agreed upon by the parties in and before October 2020 or that would have been made available to Plaintiff if Plaintiff had been able to move into [Defendant's facility] in October 2020."  (*Id*. at p. 13).

## STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether Plaintiff's has standing to recover under Title III of the ADA.

2. Whether Plaintiff's Amended Complaint states a claim under Title III of the ADA.

3. Whether Plaintiff's Amended Complaint states a claim under the FHA.

4. Whether Plaintiff's Amended Complaint states a claim for injunctive relief.

## STANDARDS OF REVIEW

**A)      Rule 12(b)(1)**

When a court lacks power to hear a case, including for reasons of mootness or lack of standing, that court may dismiss the case for lack of subject matter jurisdiction. *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015).  A plaintiff's failure to show standing may be established in the complaint alone.  *See Robinson v. TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997). Under Article III of the United States Constitution, a dispute is only properly resolved through the judicial process where the plaintiff has standing to bring suit. *See*

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).  To establish Article III standing, a plaintiff must show (1) an "injury in fact" that is concrete, particularized, and actual or imminent; (2) that the injury in fact is "fairly traceable" to the challenged conduct of the defendant; and (3) that it is likely, not merely speculative, that the injury can be redressed by a favorable decision.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

### B)     Rule 12(b)(6)

To survive Rule 12(b)(6) dismissal, a plaintiff must allege sufficient facts to show that relief "is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); FED. R. CIV. P. 12(b)(6).  A wholly conclusory statement of claim cannot "survive a motion to dismiss *whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery*."  *Twombly*, 550 U.S. at 561 (emphasis added).  Unless a complaint "nudge[s] their claims across the line from conceivable to plausible, their complaint *must* be dismissed[.]"  *Id.* at 570 (emphasis added).  Accepting the allegations as true, a plaintiff's "*[f]actual* allegations must be enough to raise the right to relief above the speculative level" to avoid dismissal.  *Id.* at 555 (emphasis added); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

A claim has facial plausibility when a plaintiff pleads *factual content* that allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  A complaint that pleads facts "merely consistent with" a defendant's liability

"stops short of the line between possibility and plausibility of 'entitlement to relief.'"   *Id.* (quoting *Twombly*, 550 U.S. at 557 (brackets omitted)).

Two working principles underlie *Twombly*.   "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).   Second, only a complaint that states a factually-plausible claim for relief can survive a motion to dismiss. *Id.* at 679 (citing *Twombly*, 550 U.S. at 556).

A court should not assume the truth of assertions based on mere legal conclusions.   Legal conclusions can provide a framework, but must be supported by factual allegations.   "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."   *Id.*   If the facts alleged in a complaint "do not permit the court to infer more than the mere possibility of misconduct," a plaintiff has not shown an entitlement to relief.  *Id.* (citing FED. R. CIV. P. 8(a)(2)).

"Naked assertions devoid of further *factual* enhancement" are not enough.   *Ford v. Richardson*, No. 3:15-CV-0658-M-BK, 2015 WL 2330119, at *3 (N.D. Tex. Apr. 21, 2015) (quoting *Twombly*, 550 U.S. at 557) (emphasis added), *adopted by*, 2015 WL 2345620 (N.D. Tex. May 14, 2015).   A factual allegation "merely creating a suspicion" that a plaintiff might have a right of action is insufficient.  *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 421 (5th Cir. 2006).   Dismissal is proper if a complaint lacks a factual allegation regarding any element necessary to obtain relief.  *Id.*  Where allegations in a complaint, "however true, could not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Cuvillier*, 503 F.3d at 401.

## ARGUMENT

Despite being afforded an opportunity to amend, Plaintiff's Amended Complaint fails to establish standing under Title III of the ADA, as well as fails to state a claim under either the ADA or the FHA.  Accordingly, Plaintiff's suit should be dismissed pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

### A)   As Plaintiff lacks standing to pursue her ADA claim, it should be dismissed pursuant to Rule 12(b)(1).

As this Court rightly noted, Title III of the ADA only allows for injunctive relief, not money damages.  (Doc. 24, p. 6 (citing 42 U.S.C. § 12188 (incorporating the remedial scheme set forth in 42 U.S.C. § 2000a-3(a)); *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F.App'x 180, 183 (5th Cir. 2015) (per curiam); *Van Winkle v. Pinecroft Ctr., L.P.*, No. CV H-16-2694, 2017 WL 3648477, at *4 (S.D. Tex. Aug. 23, 2017) ("Money damages are not available in a private action . . . under Title III of the ADA, but only injunctive relief and attorney's fees.")).  As such, in order to have standing to pursue an ADA claim, Plaintiff must demonstrate a "real and immediate threat of repeated injury."  (Doc. 24, p. 6 (citing *Deutsch v. Annis Enters., Inc.*, 882 F.3d 169, 173 (5th Cir. 2018) (per curiam) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)).  As this Court further concluded, the injunctive relief Plaintiff seeks involves accommodations to a particular unit in Defendant's facility.  (Doc. 24, p. 7).  "Even if these allegations establish a strong likelihood that Brady will again be admitted to the Denton Village, they do not establish a strong likelihood that she will need accommodations for her allergies and autoimmune issues or that she will be denied such accommodations."  (*Id.*).  As such, this Court held that Plaintiff did not have standing to pursue injunctive relief under Title III of the ADA and dismissed for lack of subject matter jurisdiction. (*See id.* at p. 7-8).

Nothing in Plaintiff's Amended Complaint alters this Court's prior conclusions. Presumably in response to this Court's ruling, Plaintiff alleges the following:

> Plaintiff has still not been able to locate any alternative to Denton Village as a place that can meet her varied needs. She still requires the accommodations that she requested in her original interactions with Denton Village, as described above. She has every intention of moving into Denton Villag, if she is granted the accommodations she requested and still requires. Denton Village has only a certain number of residences that are sufficiently spacious and equipped to accommodate Plaintiff's needs. She would require the accommodation of testing for mold at her own expenses if Denton Village offered her the same residence as previously or one similarly problematic with respect to the potential for exposure to toxic mold. Because of her conditions, she would need the ability to ensure that any Denton Village residence was as free as possible from other triggers as well. She would need the carpeting in light of her polyarthralgia. Because of her deteriorating health, she cannot wait on a waiting list to repeat the application process due to Defendant's refusal to grant her reasonable and necessary accommodations before.

(Doc. 25, ¶ 10).

Despite this addition, the same questions persist.  Plaintiff still seeks the same relief and fails to allege plausible facts of an impending injury.  Instead, Plaintiff simply seeks redress for a perceived past wrong and puts forth mere hypotheticals of a future injury.  Nothing in her Amended Complaint suggests a "strong likelihood" that she will need accommodations or that they will be denied.  (Doc. 24, p. 7).  As such, Plaintiff does not have standing to pursue injunctive relief under Title III of the ADA.  This Court should dismiss Plaintiff's ADA claim for lack of subject matter jurisdiction.  *See* FED. R. CIV. P. 12(b)(1).

**B)      As Plaintiff failed to state an ADA claim, it should be dismissed pursuant to Rule 12(b)(6).**

Typically referred to as Title III of the ADA, section 12182 prohibits discrimination against persons with disabilities by places of public accommodation, including services operated by private entities.  *See Bracken v. G6 Hospitality LLC*, No. 4:14-CV-644-ALM-CAN, 2016 WL 3946791, at *5 (E.D. Tex. June 3, 2016).  "Therefore, to state a claim under Title III, Plaintiff

must allege that:  (1) he has a disability within the meaning of the Act; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the plaintiff was denied public accommodations by the defendant because of his disability."  *Id.*  Plaintiff fails to state a claim under every element.

### 1)  No facts establishing a disability under the ADA are alleged.

Under the ADA, a disability is "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. §12102(1).  "Major life activities" are defined as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  Finally, "[t]he impairment's impact must be permanent or long term ... [and] does not include a transitory injury that has no permanent effect on the plaintiff's health."  *Bankhead v. Lifeguard Ambulance Serv. of Tex.*, No. 4:18-CV-605-A, 2019 WL 2904364, at *3 (N.D. Tex. July 3, 2019) (citing *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002) and *Williamson v. American Nat'l Ins. Co.*, 695 F. Supp. 2d 431, 448 (S.D. Tex. 2010)).

Despite amending, Plaintiff still fails to even identify her purported disabilities, other than to claim she suffers from an unidentified autoimmune disease, allergies, and a joint condition.  Moreover, Plaintiff's allergies appear to be food-related and have no bearing on her lawsuit.  In short, Plaintiff has not alleged that her allergies are related to her claims in any way.  Her conclusory allegations do not sufficiently state a disability.  *See Houston*, 2017 WL 4653246 at *6 ("Plaintiff has not alleged any facts displaying what her disability is or how her disability substantially limits one of her major life activities."); *Bracken*, 2016 WL 3946791 at *6

("Plaintiff's claim for discrimination on the basis of disability cannot survive absent such factual allegations; Plaintiff's failure to allege that he is disabled under that ADA warrants dismissal of his Title III claim."); *Adamore v. Southwest Airlines Corp.*, No. H-11-0564, 2011 WL 6301398, at *7 (N.D. Tex. Dec. 15, 2011) ("Although Plaintiff summarily states that she is disabled, she does not identify her disability and pleads no facts linking her alleged disability to any mistreatment or lack of accommodation … therefore [Plaintiff] fails to state a claim for which relief may be granted under the [ADA]").

> **2) Defendant does not operate a place of public accommodation under the ADA.**

As the Court rightly noted in a prior Order, (Doc. 17), residential facilities are generally outside the purview of the ADA, as they are not considered to be "a place of public accommodation."

The ADA defines "public accommodation" as follows:

The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce--

(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

(B) a restaurant, bar, or other establishment serving food or drink;

(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D) an auditorium, convention center, lecture hall, or other place of public gathering;

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C.A. § 12181(7).  For purposes of this case, the relevant question is whether Defendant's senior living facility falls within subpart (a)'s inclusion of "an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor."  *See id.*

Virtually every court in this circuit which has considered the question has concluded that residential facilities, such as apartments, condominiums and the like, do not fall within this definition.  *See Desch v. Wheatley*, No. 5:08-CV-922, 2010 WL 11506404, at *5 (W.D. Tex. Jan. 19, 2010), *adopted*, 2010 WL 11506405 (W.D. Tex. Mar. 18, 2010), *aff'd*, 421 Fed. App'x 394 (5th Cir. 2011) ("condominiums, along with apartments, are not considered 'public accommodations' as that term is defined by the Act and therefore, do not fall within the purview

of the ADA"); *El-Bey v. Berkshire Hathaway Home Services*, No. 4:22-CV-3528, 2023 WL 5488433, at *3 (S.D. Tex. Aug. 24, 2023) ("Since El-Bey's claims only relate to her apartment, she has not established that her ADA claims involve the requisite place of public accommodation."); *Williams v. Ladera Apartments*, No. 4:21-CV-154, 2021 WL 1691613, at *12 (E.D. Tex. Apr. 29, 2021) ("[T]hough courts are to liberally interpret the ADA, federal district courts have repeatedly found apartment complexes are not places of public accommodation."); *Kizzee v. Yale Village Apartments*, No. 4:09-cv-3268, 2010 WL 11652033, at *4 (S.D. Tex. Sept. 29, 2010) (dismissing ADA claim "[s]ince a privately owned apartment is not a place of public accommodation"); *Felknor v. Tallow Wood Apartments*, No. 08-1092, 2009 WL 3230607, at *2 (W.D. La. Sept. 28, 2009) ("The Court agrees with Defendants that residential apartment complexes are not places of 'public accommodation' and, thus, not covered by the ADA.").

Expanding beyond this circuit, the vast majority of other federal courts concur. *See Regents of Mercersburg College v. Republic Franklin Insurance Co.*, 458 F.3d 159, 165 n.8 (3d Cir. 2006) ("We agree that residential facilities such as apartments and condominiums are not transient lodging and, therefore, not subject to ADA compliance."); *see also Lancaster v. Phillips Inv., LLC*, 482 F. Supp.2d 1362, 1366 (M.D. Ala. 2007); *Indep. Housing Serv. of San Fransisco v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1344 (N.D. Cal. 1993); *Barwick v. Broadway Lofts, LLC*, No. 21-cv-01394-LTB-GPG, 2022 WL 4295336, at *4 (D. Colo. May 23, 2022); *Phibbs v. Am. Prop. Mgmt.*, No. 2:02CV00260DB, 2008 WL 746977, at *3 (D. Utah Mar. 19, 2008); *Mabson v. Assoc. of Apartment Owners of Maui*, CV. No. 06–00235 DAE–LEK, 2007 WL 2363349, at *10 (D. Hawaii Aug. 13, 2007); *Radivojevic v. Granville Terrace Mut.*

*Ownership Trust*, No. 00 C 3090, 2001 WL 123796, at *3, n.4 (N.D. Ill. Jan. 3, 2001); *Hanks v.*

*Tilley*, No. 1:98CV00789, 1999 WL 1068484, at *2 (M.D.N.C. Feb. 2, 1999).

As the foregoing establishes, the overwhelming majority of courts which have considered

this issue have concluded that residential facilities do not fall within the ADA's definition of a

"public accommodation."  As Plaintiff's ADA claim is predicated on purported accommodations

to what is essentially an apartment, this Court should dismiss Plaintiff's ADA claim.

In the event Plaintiff argues that a senior living facility requires a different analysis, the

Kansas District Court recently addressed this very question.  *See Coe v. Cross-Lines Retirement*

*Ctr., Inc.*, No. 22-2047-EFM, 2022 WL 17555300 (D. Kan. Dec. 9, 2022).  The court began by

noting that "facially, the ADA does not include a private residence, such as a residential home or

apartment."  *Id.* at *2 (quoting *Phibbs*, 2008 WL 746977 at *3).  The plaintiffs nevertheless

argued that, since the defendant's facility catered to senior citizens, this altered the equation.  In

particular, the plaintiff argued that the defendant's facility fell within the public

accommodation's definition of a "senior citizen center."  *See id.*  In rejecting this argument, the

court held:

> Contrary to Plaintiffs' contention, § 12181(7)(K) does not create a backdoor
> exception by which typical apartment complexes may be brought under the
> ADA's provisions. The plain meaning of "senior citizen center" is not an
> apartment complex catering to the elderly but rather a place hosting events,
> activities, and services for senior citizens. Furthermore, "senior citizen center"
> appears in the context of § 12181(7)(K) between "day care center" and "homeless
> shelter." It is hard to imagine that either of these could ever be construed as
> referring to a residential facility. Indeed, the legislative history of the ADA clearly
> states that "[o]nly nonresidential facilities are covered by this title." As an
> example, the legislature stated if "a large hotel [ ] has a residential apartment
> wing, the residential wing would be covered under the Fair Housing Act, rather
> than by this title. The nonresidential accommodations in the rest of the hotel
> would be covered by this title."
>
> Plaintiffs argue briefly that the apartment complex here may also qualify as a
> public accommodation as a "social service center establishment." 28 C.F.R. §

36.406(d) defines social service center establishments as "[g]roup homes, halfway houses, shelters, or similar social service center establishments that provide either temporary sleeping accommodations or residential dwelling units." From this definition, an apartment complex, even one with clientele purposely comprised of senior citizens, clearly is not in the same category as a group home or halfway house. After all, "[w]hether a facility is a public accommodation under the ADA turns on whether the facility is open indiscriminately to other members of the general public." There are no allegations that is the case here. Rather, Plaintiffs are renters leasing private residential apartments. Cross-Lines status as a non-profit organization does not change that. Therefore, the apartment complex here is not a social service center establishment.

Lastly, Plaintiffs have failed to point to any case where an apartment complex like the one at issue here was considered to come under the ADA's provisions. In contrast, multiple courts have found that the ADA does not apply to private residences, including apartment complexes. Where the facility at issue does nothing more than lease residential apartments to senior citizens, the Court has no hesitation in joining the judicial majority to hold the ADA does not apply.

*Id.* at *2-3 (footnotes omitted).

The Northern District's opinion in *No Barriers, Inc. v. BRH Tex. GP, LLC* is also instructive. *See* No. 3:01-CV-344-R, 2001 WL 986924 (N.D. Tex. Aug. 2, 2001). There, the plaintiff brought an ADA claim because the defendant allegedly failed to provide a wheelchair accessible route to the apartment complex's common areas. *See id.* at *1. The court looked to, and agreed with, other jurisdictions, which have applied a two-tiered approach. "These district courts, while consistently denying that solely residential facilities are public accommodations, have acknowledged that residential accommodations exempt from Title III and public accommodations subject to Title III can exist within the same facility." *See id.* at *3. The Court ultimately held that, although the ADA does not apply to residential facilities, it may apply to the leasing office, since it is open to the public. *See id.* at *3-4. In other words, *No Barriers* stands for the proposition that an ADA claim turns on where the requested accommodation is located. If it is in an area that is open to the public, the ADA may very well apply. However, if the requested accommodation is within a residential unit itself, the ADA does not apply.

None of Plaintiff's requested accommodations pertain to Defendant's common spaces nor do they involve any activities or services exclusive to senior living facilities.  Instead, the alleged accommodations Plaintiff seeks relate solely to her sought-after residence.  As such, none of her sought-after accommodations relate to Defendant's status as a senior living facility, and all pertain exclusively to the unit she seeks to reside in.  Plaintiff's Amended Complaint highlights this fact, as she alleges that one of the primary reasons she selected Defendant's facility is that it does not require a meal plan and thus, allows her to live independently.  (Doc. 25, ¶ 18).  As such, *Coe*, *No Barriers*, and the litany of other opinions which have decided this issue control.  Defendant's residential living facility—even if catering to senior citizens—is not a place of public accommodation under the ADA.  *See Coe*, 2022 WL 17555300 at *4.

### 3) No factual allegations of an intent to discriminate based on Plaintiff's alleged disability.

In addition to establishing that she meets the definition of disabled under the ADA, Plaintiff must also adequately allege that she was discriminated against *because of* her disability.  *See Bracken*, 2016 WL 3946791 at *6.   "Naked allegations of discriminatory intent are too conclusory to survive a motion to dismiss."  *C & K Trucking LLC v. Ardent Mills LLC*, No. 3:20-CV-1104-K, 2021 WL 211547, at *3 (N.D. Tex. Jan. 20, 2021).  While discriminatory intent can be shown by circumstantial evidence, a plaintiff must allege facts "sufficient to support an inference of discriminatory intent."  *Sherrod v. United Way Worldwide*, 821 F. App'x 311, 316 (5th Cir. 2020) (per curiam).  In other words, a plaintiff must allege that it was because of her disability that she was discriminated against.  As the Fifth Circuit explained:

> He argues on appeal that because he was allegedly left on the floor of the transit van from Randall County to TDCJ and not given the opportunity to use the restroom, he was discriminated against and not given safe transit as a disabled person.   That claim, however, does not establish discrimination based on disability: *The ADA is not violated by "a prison's simply failing to attend to the*

*medical needs of its disabled prisoners."*  There is no evidence that the allegedly improper action of leaving Nottingham on the floor of the transit van had any connection to his alleged disability.  There is no indication that he was treated differently because of his disability.  He thus has not established a claim under the ADA.

*Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) (emphasis added) (footnote and citations omitted).

As explained above, Plaintiff does not allege that Defendant's alleged actions were motivated by her disability.  To the contrary, she specifically alleges that Defendant decided to move onto another applicant due to time delays.  (Doc. 25, ¶ 22).  In an attempt to nevertheless tie Defendant's alleged actions to her disability, she claims that she "unambiguously communicated the nature of her allergens and autoimmune disorder" to Defendant.  (Doc. 25, ¶ 22).  However, no further facts are provided.  Plaintiff fails to allege how these communications took place, precisely when they took place, or specifically what information was conveyed.  In short, there are no facts provided which allow this Court to consider precisely what was "unambiguously communicated" to Defendant or how these communications impact her requested accommodations.  As such, despite an opportunity to amend, Plaintiff still fails to state a claim under the ADA.

### C)   As Plaintiff fails to state a FHA claim, it should be dismissed pursuant to Rule 12(b)(6).

Plaintiff alleges that "Defendant's actions … constitute a refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person an opportunity to use and enjoy a dwelling, in violation of the FHA, 42 U.S.C. § 3604(f)(3)(B)."  (Doc. 25, ¶ 29).  Because Plaintiff has not sufficiently alleged all elements necessary to state a claim under the FHA, her Amended Complaint should be dismissed.

"The FHA makes it unlawful to 'discriminate against an individual in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of a handicap.'" *Houston v. DTN Operating Co., LLC*, No. 4:17-CV-00035, 2017 WL 4653246, at *3 (E.D. Tex. Oct. 17, 2017) (quoting 42 U.S.C. § 3604(f)(2)).  Discrimination includes refusing to "make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id*. (citing 42 U.S.C. § 3604(f)(3)(B)).  Thus, "[t]o survive a motion to dismiss on such a claim, a plaintiff must allege (1) that an adverse action making the dwelling unavailable occurred, (2) that the action was taken against someone with a handicap, and (3) that the adverse action was taken because of a handicap." *Harmony Haus Westlake, LLC v. Parkstone Prop. Owners Ass'n, Inc.*, 468 F. Supp. 3d 800, 809 (W.D. Tex. 2020) (quotations and citations omitted).

### 1)  Plaintiff has not adequately stated a "handicap" under the FHA.

This Court previously concluded that Plaintiff's original complaint failed to state a claim because it merely alleged that Plaintiff "suffers from allergies, an unspecified autoimmune disease, and a joint condition, without establishing the severity of these impairments or how they limit her major life activities."  (Doc. 24, p. 11).  Plaintiff's Amended Complaint failed to correct these deficiencies.

"The FHA defines handicap as '(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such impairment, or (3) being regarded as having such an impairment.'" *Houston*, 2017 WL 4653246 at *3 (quoting 42 U.S.C. § 3602(h); 24 C.F.R. § 100.201).  This requires factual allegations sufficient to determine whether this definition is met.  As the *Houston* court explained:

> Although Plaintiff claims that The Republic's acts were motivated by her
> disability, the Complaint is silent as to what her disability is or how this disability
> substantially affects a major life activity.  Plaintiff presents no medical facts to
> support her claim that she is disabled.  Plaintiff identifies no activity, no less a
> "major life activity," that she claims to be impaired by her "mental illness."
> Plaintiff's doctor states hat Plaintiff meets the definition of disability under the
> FHA, Americans with Disabilities Act, and Rehabilitation Act, and "due to mental
> illness, Plaintiff has certain limitations.  This diagnosis may be accurate, but it
> fails to set forth any facts regarding if or how any of Plaintiff's conditions
> "substantially limits" a major life activity.

*Id.* at *3 (citing *Thomas v. Salvation Army*, 841 F.3d 632, 639 (4th Cir. 2016) (holding that the

plaintiff's complaint was deficient despite providing that she received care from a behavioral

health organization, had an appointment with the doctor, and was on medication, because the

complaint failed to adequately identify her mental disability); *Miles v. Housing Authority

Texarkana, TX*, No. 5:15CV37-JRG-CMC, 2016 WL 47927, at * 3 (E.D. Tex., Jan. 5, 2016)

(holding that the plaintiff failed to establish she was disabled under the FHA when she alleged

she had mental, emotional, and psychological disorders that pose "great obstacles in her life and

which affects her moods and ability to comprehend"); *Barfield v. Plano Housing Authority*, No.

4-11-cv-00206, 2012 WL 3135892, at *5 (E.D. Tex. July 6, 2012) (holding that the plaintiff

failed to create a genuine issue of fact when the complaint did not state what his disability was or

how the defendants failed to accommodate it) (internal citations omitted); *see also Wolf v. Bank

of America, N.A.*, 2014 WL 12633677, at *6 (E.D. Tex. Sept. 30, 2014) ("Plaintiffs have stated

insufficient facts to state a handicap[.]").

Plaintiff's allegations still assert that she suffers from an autoimmune disease and

allergies.  (Doc. 25, ¶ 17).  Plaintiff makes the conclusory statement that these conditions

"substantially impact her ability to live a normal life, when triggered, including her ability to

breathe, to eat, to sleep, to walk, to lift, and to work."  (*Id.*).  Her specific autoimmune disease is

still not identified.  Her allergies are likewise not identified, although it seems as though they are

food allergies.  (*Id.* at ¶ 17).  She does attempt to bolster her claim of a handicap by detailing her dietary restrictions and skin sensitivity.  (*See id.*).  However, this raises more questions than it answers, as none of her requested accommodations have anything to do with these purported handicaps.

Much like the conclusory allegations in *Houston*, Plaintiff's unsubstantiated allegations that her unnamed disabilities meet the FHA's definition fails to state a claim because it contains inadequate facts in support.  *See Houston*, 2017 WL 4653246 at *3.

### 2)   Plaintiff has not adequately alleged that Defendant discriminated against Plaintiff on account of her handicap.

Even assuming Plaintiff has sufficiently alleged a handicap under the FHA, her obligations for stating a claim do not end there.  She must further allege that (1) Defendant was aware of her handicap, (2) that her requested accommodations were directly related to her handicap, and (3) that Defendant discriminated against her because of her handicap.  *See Soniat v. Jackson*, No. 4:14cv77, 2014 WL 6968871, at *3 (E.D. Tex. Dec. 9, 2014); *see also Harmony Haus Westlake, LLC*, 468 F. Supp. 3d at 809.  Or, as this Court put it, "[t]o prevail in a discrimination case under a reasonable accommodation theory, a plaintiff must establish both that she requested an accommodation in 'direct and specific terms' and that the defendant knew of the disability and of its consequential limitations."  (Doc. 24, p. 11 (quoting *Windham v. Harris County*, 875 F.3d 229, 236-37 (5th Cir. 2017)).

Plaintiff's Amended Complaint still fails to provide the requisite facts.  She claims that in November and December of 2019, she corresponded with Defendant regarding her allergies and autoimmune disorder and provided "sufficient information … to grasp the extent and impact of these conditions."  (Doc. 24, ¶ 19).  She further alleges that she "unambiguously communicated" with Defendant regarding her disabilities in a series of communications in October 2020.  (Doc.

24, ¶ 22).   Foremost, Plaintiff fails to allege how these purported conversations took place or what specifically was communicated.   In short, Plaintiff's complaint does not go beyond mere "labels and conclusions" in pleading her claim of discrimination.   *Soniat*, 2014 WL 6968871 at *4 (quoting *Twombly*, 550 U.S. at 555).   More importantly, she still fails to state her accommodations were requested "in direct and specific terms."   (Doc. 24, p. 11).

Finally, Plaintiff failed to allege how her requested accommodations are related to her alleged handicaps.   "Reasonable accommodations are limited to issues directly related to a disability; such accommodations involve benefits by reason of their disabilities, and not because of some quality that they share generally with the public."   *See Soniat*, 2014 WL 6968871 at *3 (quotations omitted).   The requested accommodations are new carpeting, a security system, enclosing a patio, and mold testing.   (Doc. 25, ¶ 20-21).   Yet, Plaintiff does not allege how this disparate list of remodeling requests are directly related to her alleged handicaps.   *See Soniat*, 2014 WL 6968871 at *4 ("Neither of these requests are directly related to Plaintiff's alleged disability such that they state a refusal to make reasonable accommodations necessary to afford Plaintiff an equal opportunity to use and enjoy a dwelling because of her disability.").   There is nothing in her complaint that demonstrates that, in her communications with Defendant, Plaintiff directly and specifically tied her requested accommodations with her alleged disabilities. Without doing so, Plaintiff failed to state a claim.

### D)   Plaintiff's fails to state a claim for injunctive relief.

"To obtain injunctive relief, a plaintiff is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits.'"   *Johnson v. CitiMortgage, Inc.*, No. 3:14-CV-1794-M-BH, 2015 WL 269970, at *5 (N.D. Tex. Jan. 21, 2015) (quoting *Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011)).   If

the underlying claim on which the request for injunctive relief is predicated is subject to dismissal, so too is the request for injunctive relief. *See id.* As shown above, Plaintiff has not stated a claim under either proffered causes of action. Accordingly, Plaintiff's request for injunctive relief is subject to dismissal as well.

Additionally, while the ADA does allow for injunctive relief, it is limited to the following:

> Injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter. Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or server, modification of a policy, or provision of alternative methods, to the extent required by this subchapter.

42 U.S.C. § 12188(a)(2); *see also Bracken*, 2016 WL 3946791 at *4. The FHA similarly allows for injunctive relief in order to relieve the discriminatory conduct. *See* 42 U.S.C. § 3613(c)(1) ("In a civil action under subsection (a), if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages, and subject to subsection (d), may grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate."). However, neither allow for the wholesale grant of injunctive relief unrelated to the curing of the discriminatory conduct. Thus, any request for injunctive relief must be specifically tailored to remedying the actionable discriminatory conduct. If a party seeks injunctive relief beyond what is necessary to remedy the discriminatory conduct, this is subject to dismissal. *See Bracken*, 2016 WL 3946791 at *4 (dismissing a number of requests for injunctive relief as beyond the scope of injunctive relief available under the ADA).

Again, Plaintiff seeks "this Court enter a permanent injunction enjoining Defendant from continuing to deny Plaintiff the accommodations she requires to have an equal opportunity to use and to enjoy the housing of her choice in [Defendant's facility], including (1) inclusion at the head of the waiting list for Unit #60 or an equal or superior unit, including priority over current Denton Village residents, (2) carpeting similar or superior to that agreed upon between the parties in and before October 2020, (3) the right to include a security system on the premises to the degree agreed upon between the parties in and before October 2020, and (4) any other accommodations or modifications that were agreed upon by the parties in and before October 2020 or that would have been made available to Plaintiff if Plaintiff had been able to move into [Defendant's facility] in October 2020."   (Doc. 25, p. 13).   The requested injunctive relief is untethered to her disabilities and appears to be little more than a request to remodel one of Defendant's units to her tastes.  As Plaintiff failed to explain how her requested injunctive relief falls within the purview of injunctive relief available under the ADA and FHA, her request for injunctive relief should be dismissed.  *See Bracken*, 2016 WL 3946791 at *4.

## CONCLUSION

This Court should dismiss all claims pursuant to Rule 12(b)(1, 6).

Respectfully submitted,

**HORNE ROTA MOOS, LLP**

By: _____
     CHASTITI N. HORNE
     State Bar No. 24007385
     JOSHUA C. ANDERSON
     State Bar No. 24027198
     2777 Allen Parkway, Suite 1200
     Houston, Texas 77019-2141
     Telephone: (713) 333-4500
     Facsimile:  (713) 333-4600
     chorne@hrmlawyers.com
     janderson@hrmlawyers.com

ATTORNEY-IN-CHARGE FOR DEFENDANT, THE EVANGELICAL LUTHERN GOOD SAMARITAN SOCIETY

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the forgoing with the Clerk of the Court using the CM/ECF system on this **20th** day of November, 2023.

Mark Whitburn                         *Via Electronic Service*
Sean Pevsner
Whitburn & Pevsner, PLLC
2000 E. Lamar Blvd., Suite 600
Arlington, Texas 76006

_____
Chastiti N. Horne