UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MARY BRADY | § | |
| | § | |
| v. | § | CIVIL NO. 4:22-CV-841-SDJ |
| | § | |
| THE EVANGELICAL LUTHERAN | § | |
| GOOD SAMARITAN SOCIETY | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant The Evangelical Lutheran Good Samaritan Society's ("Good Samaritan Society") Motion to Dismiss Plaintiff's Amended Complaint. (Dkt. #30). Having considered the motion, applicable law, and briefing by the parties, the Court concludes that the motion should be **GRANTED**.

### I. BACKGROUND

Plaintiff Mary Brady is a waitlisted applicant of the Denton Village senior living community—operated by Good Samaritan Society. She sued for alleged discrimination under Title III of the Americans with Disabilities Act ("ADA") and under the Fair Housing Act ("FHA"). Brady claims that Good Samaritan Society denied her rental application and refused to provide her with reasonable accommodations for an unspecified autoimmune disease and allergies. (Dkt. #25 ¶ 6). But Brady's claims are belied by the amended complaint, which tells a story of reasonable accommodation, not invidious discrimination.

Brady first applied to Denton Village in September 2017. (Dkt. #25 ¶ 2). She was shown several available units in early 2018. (Dkt. #25 ¶ 3). Brady declined them all. (Dkt. #25 ¶ 3). Some units were "too small"; other units were "too close to building construction that would likely exacerbate her health difficulties." (Dkt. #25 ¶ 3). As a

result, Brady waited two years "for a suitable residence to become available." (Dkt. #25 ¶ 4).

Brady states that she was offered "such a residence in March 2020." (Dkt. #25 ¶ 4). But this residence was one that Brady had previously declined—Unit #60. (Dkt. #25 ¶ 20). Besides citing to an "increasingly urgent need for senior living housing," (Dkt. #25 ¶ 20), Brady says nothing about why this unit was now "suitable" to her needs. Yet she accepted it anyway. Because of the issues with the nearby construction and the "emerging COVID-19 pandemic," however, the parties agreed to delay her move-in date "until the fall of 2020." (Dkt. #25 ¶ 20). Thus, Good Samaritan Society agreed to absorb the cost of leaving Unit #60 vacant for about half a year.

In September 2020, Brady claims that a previous tenant informed her of a "sewer backup that had left standing water" in Unit #60. (Dkt. #25 ¶ 21). Brady does not allege that this previous tenant informed her of mold issues with Unit #60. Nor does she allege that anyone else informed her of mold issues. Yet she requested that Denton Village accommodate "testing the residence for mold" because she was advised that "her auto immune disease would not improve if she had exposure to toxic mold." (Dkt. #25 ¶ 21).

Good Samaritan Society denied Brady's request. (Dkt. #25 ¶ 22). In Brady's own words, Good Samaritan Society did so because "it was dissatisfied with the delays" and "chose to move on to the next applicant on the waiting list." (Dkt. #25 ¶ 22). It filled the unit soon after. (Dkt. 25 ¶ 22).

Brady alleges that Good Samaritan Society denied her request for reasonable accommodations, even though it "knew the extent of [her] disability when" denying her request.[1] (Dkt. #25 ¶ 28). But the amended complaint provides scant information about her alleged disability, Good Samaritan Society's knowledge of this disability, the connection between Brady's requests and her alleged disability, or the reasonableness of these requests.

Brady mainly claims that she is disabled because of her "autoimmune disease and allergies." (Dkt. #25 ¶ 1). "[W]hen triggered," Brady states, these alleged conditions impact her ability "to breathe, to eat, to sleep, to walk, to lift, and to work." (Dkt. #25 ¶ 17). But this threadbare recital of statutory language lacks support. For example, Brady states that she has "a number of diagnoses" and takes "dozens of medications." (Dkt. #25 ¶ 17). The amended complaint offers no further details about who made these diagnoses, when she was diagnosed, what she is diagnosed with, or what triggers these nebulous conditions. According to Brady, potential triggers broadly include "any exposure to triggering allergens or anything that might implicate her autoimmune disorder." (Dkt. #25 ¶ 17).

Brady claims that these conditions require her to "follow a completely structured regimen the entire day," force her to wear special clothing, and cause her to struggle with eating, sleeping, and traveling. (Dkt. #25 ¶ 17). But how these alleged impairments relate to her requested accommodations is unclear. After all, Brady

---

[1] The Court takes notice of Brady's statement that she believes "[t]he term 'handicap' is antiquated and widely considered pejorative." (Dkt. #25 ¶ 28 n.1). The Court also recognizes that what the ADA refers to as a "disability," the FHA refers to as a "handicap." *See* 42 U.S.C. § 12102; 42 U.S.C. § 3602(h). Thus, outside of discussing her FHA claim, the Court uses "disability" in relation to Brady's alleged conditions.

controls what she eats, when she sleeps, what she wears, when she travels, and what regimen she follows—not Good Samaritan Society.

Further, Brady concludes that Good Samaritan Society knew she was disabled because she "unambiguously communicated the nature of her allergens and autoimmune disorder" in several correspondences, which allowed Good Samaritan Society to "grasp the extent and impact of these conditions." (Dkt. #25 ¶ 19, 22). Aside from these conclusory statements, however, Brady says nothing about who she communicated with at Good Samaritan Society or Denton Village, when such communication(s) occurred, or the content of such communication(s). Likewise, Brady provides no other facts to support the conclusory statement that Good Samaritan Society "grasp[ed] the nature" of her disability. Nor does she attach any documentation to support the existence or content of her alleged correspondences with Good Samaritan Society or Denton Village.

After retaining counsel and discussing Brady's denial,[2] Good Samaritan Society placed her near the top of the waitlist for Denton Village, under only its current residents. Brady suggests that she "cannot wait on a waiting list" because her health is deteriorating. (Dkt. #25 ¶ 24). Thus, she requests the following relief: (1) a spot on the waitlist above the current residents for the unit she previously sought "or an equal or superior unit," (2) the right to install carpet "in light of her polyarthralgia," (3) the "right to include a security system on the premises," (4) the

---

[2] While Brady mentions that her counsel corresponded with Good Samaritan Society and "explained Plaintiff's disabilities and the reasons for her need for the accommodations at issue," (Dkt. #25 ¶ 7), this occurred after the alleged discrimination and is thus irrelevant to this claim.

4

right to perform mold testing if Good Samaritan Society offers her "the same residence . . . or one similarly problematic" with "the potential for exposure to toxic mold," and (5) the right "to ensure that any" residence she is offered is "as free as possible from other triggers as well." (Dkt. #25 ¶¶ 24–25). Absent from her requested relief are any supporting facts to show how these remedies would address a risk of future harm. For example, the amended complaint does not allege that Good Samaritan Society has a standing refusal to accommodate Brady's requests should she later receive approval for a vacant unit. Also absent is an explanation of why Brady would need the mold-testing accommodation if she is approved for a different unit. Nor does Brady explain how these requested accommodations relate to her alleged disability.

Finally, Brady mentions several other potential disabilities—polyarthralgia (joint pain), sarcopenia (muscle loss), a lumbar strain, and two bulging discs. While Brady pleads that she explained the joint pain to Good Samaritan Society in connection with her carpeting request, nothing supports her conclusory assertion that her condition requires carpeting or that this request is reasonable. The other potential disabilities Brady recites, by contrast, are mentioned only once in the amended complaint. (Dkt. #25 ¶ 17). It is unclear whether Brady advised Good Samaritan Society about these other potential disabilities and what connection, if any, they have to her requested accommodations.

## II. LEGAL STANDARD

Defendant Good Samaritan Society seeks dismissal of the case for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

## A. Legal Standard for Establishing the Court's Subject-Matter Jurisdiction

The power of federal courts is circumscribed by the limits set forth in Article III of the Constitution. *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Article III legitimizes the use of judicial power "to declare the rights of individuals and to measure the authority of governments" in resolving "cases" and "controversies." *Id.* For that reason, a federal court must dismiss a case for lack of subject-matter jurisdiction if the court lacks "the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quotation omitted). Because the "burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction," the "plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

## B. Legal Standard for Rule 12(b)(6) Motions

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court has instructed that

plausibility means "more than a sheer possibility," but not necessarily a probability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (cleaned up).

When assessing a motion to dismiss under Rule 12(b)(6), the facts pleaded are entitled to a presumption of truth, but legal conclusions that lack factual support are not entitled to the same presumption. *Id.* The court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To determine whether the plaintiff has pleaded enough to "nudge[] [its] claims . . . across the line from conceivable to plausible," a court draws on its own common sense and judicial experience. *Ashcroft*, 556 U.S. at 679–80 (quoting *Twombly*, 550 U.S. at 570). This threshold is surpassed when "a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

In conducting this review, the Court's inquiry is limited to "(1) the facts set forth in the [amended] complaint, (2) documents attached to the [amended] complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

### III. DISCUSSION

The Court previously held that Brady's original complaint failed to establish the elements of an FHA claim or standing to recover under the ADA. *Brady v. Evangelical Lutheran Good Samaritan Soc'y*, No. 22-CV-841, 2023 WL 6393882, at *3–6 (E.D. Tex. Oct. 2, 2023). Specifically, the Court held that Brady's claims for injunctive relief and for violations of Title III of the ADA were dismissed without prejudice for lack of subject-matter jurisdiction. *Brady*, 2023 WL 6393882, at *6. The Court further held that Brady's claims under the FHA, and any remaining claims, were dismissed without prejudice for failure to state a claim upon which relief could be granted. *Id.* Brady was given the opportunity to file an amended complaint, and she has done so. (Dkt. #25). The Good Samaritan Society contends that Brady's current complaint remains fatally flawed and seeks dismissal once more under Rules 12(b)(1) and 12(b)(6). (Dkt. #30).

The Court agrees. Brady still lacks standing to recover under the ADA, and she has not sufficiently pleaded facts to render her FHA claim plausible. Because the Court does not believe any further amendment would cure the deficiencies in Brady's claims, her amended complaint will be dismissed with prejudice.

### A. Brady Lacks Standing to Obtain Injunctive Relief Under ADA Title III.

Good Samaritan Society argues that Brady has failed to establish standing because her amended complaint "seeks redress for a perceived past wrong and puts forth merely hypotheticals of future injury." (Dkt. #30 at 9). Specifically, Good Samaritan Society explains that Brady lacks standing because "[n]othing in her Amended Complaint suggests a 'strong likelihood' that she will need accommodations

or that they will be denied." (Dkt. #30 at 9). Brady counters that she has standing because she still "seeks to reside at [Denton Village] and she requires [certain] accommodations to accomplish this goal." (Dkt. #33 at 7). Brady also argues that because she "was denied these accommodations when she first applied to [Denton Village] and then again later in communications through counsel," her allegations are not "speculative or hypothetical." (Dkt. #33 at 8).

The Court's jurisdiction extends to only active cases and controversies, not to hypothetical disputes. U.S. CONST. art. III, § 2; *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422–24, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021). To recover in federal court, a plaintiff must therefore establish the three elements of constitutional standing: "injury in fact, causation, and redressability." *DeOtte v. Nevada*, 20 F.4th 1055, 1070 (5th Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The plaintiff must establish these elements independently for each claim asserted and for each form of relief sought. *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439, 137 S.Ct. 1645, 198 L.Ed.2d 64 (2017) (quotation omitted); *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009).

While a court may enjoin a future "harm from occurring," the risk of future harm must be "sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 435. Thus, the plaintiff must "establish a sufficient likelihood of future injury." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381, 144 S.Ct. 1540, 219 L.Ed.2d 121 (2024). A theory that relies "on a highly attenuated chain of possibilities" is insufficient. *Clapper v. Amnesty Inter. USA*, 568 U.S. 398, 410, 133 S.Ct. 1138, 185 L.Ed.2d 264

(2013). Similarly, "[m]erely having suffered an injury in the past is not enough; the plaintiff must show a 'real or immediate threat that the plaintiff will be wronged again.'" *Deutsch v. Annis Enters., Inc.*, 882 F.3d 169, 173 (5th Cir. 2018) (per curiam) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). In the ADA and FHA context specifically, courts have required the plaintiff to establish with sufficient detail that she intends to return or move to the offending location. *Id.* at 174.

Brady's claims fail to plausibly allege an injury in fact because each claim seeks to redress past harms or hypothetical future harms. For example, Brady's request for a better spot on the waitlist seeks to redress the past harm of her previous denial to rent Unit #60. The amended complaint says nothing about how this past harm will likely recur given that Unit #60 is rented out. Since "having suffered an injury in the past is not enough," this request fails "to meet the standing requirements for" injunctive relief. *Deutsch*, 882 F.3d at 173. Likewise, Brady has not supplied any facts to plausibly allege that she will be denied admission to an "equal or superior unit."

Further, while Good Samaritan Society may have denied Brady's requests relating to mold testing, carpeting, and installing a security system as to Unit #60, she provides no facts to suggest why this would happen again with a different unit. Again, since all the facts Brady provides relate to "an injury in the past," she has not sufficiently pleaded any ongoing or imminent injury in fact. *Id*. Additionally, Brady's mold-testing request turns on the hypothetical premise that she would be offered "the same residence [i.e., Unit 60] . . . or one similarly problematic." Setting aside the

10

ambiguity of what "similarly problematic" means in this context, Brady's speculative request as to a future unit in Denton Village is insufficient because it relies on "a highly attenuated chain of possibilities." *Clapper*, 568 U.S. at 410. In this regard, the amended complaint alleges nothing new to suggest that mold problems ever existed, persist now, or exist elsewhere in Denton Village.

Finally, Brady's request "to ensure that any Denton Village residence was as free as possible from other triggers" is equally amorphous and insufficiently concrete to constitute an ongoing or imminent injury in fact. Indeed, the Court has no way to determine what could create the future harm alluded to by Brady or to understand the likelihood of such a harm.

In sum, the amended complaint fails to provide sufficient information to plausibly allege a sufficient likelihood of ongoing or future injury. Thus, Brady lacks standing to request injunctive relief under Title III of the ADA.[3]

## B. Brady Fails to State a Claim Under the FHA.

Likewise, Brady fails to sufficiently allege a discrimination claim under the FHA. To begin with, the Court notes that similar standards apply to discrimination claims under the FHA as those that apply under the ADA. *See Providence Behav. Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 455 n.2 (5th Cir. 2018) (analyzing FHA reasonable accommodations claims together with reasonable accommodations claims under ADA Title II, which applies to governmental entities: "[t]he slight

---

[3] Because the Court has no subject-matter jurisdiction under Title III of the ADA, it does not reach the parties' arguments about whether Denton Village senior living facility constitutes a place of public accommodation.

differences in the respective statutes do not impact the analysis for this case");
*Swanston v. City of Plano*, 557 F.Supp.3d 781, 789 (E.D. Tex. 2021) ("[B]ecause the
Court does not find the minor distinctions between these statutes impactful on the
following analysis, the Court addresses the FHA and ADA claims together.").

Both statutes prohibit discrimination based on an impairment that
substantially limits a major life activity: what the ADA refers to as a "disability" and
the FHA refers to as a "handicap."[4] *See* 42 U.S.C. § 12102; 42 U.S.C. § 3602(h);
*Swanston*, 557 F.Supp.3d at 791 n.8 (finding the "distinction between a 'handicap'
under the FHA and a 'disability' under the ADA irrelevant"); *Bowman v. Bella
Estancias, LLC*, No. 17-CV-91, 2018 WL 1115202, at *5 (W.D. Tex. Feb. 15, 2018)
(finding "the definition of 'handicap' under the FHA" and "[t]he definition of disability
under the ADA" to be "functionally identical"). And both statutes define
discrimination to include, among other things, a failure to make reasonable
"accommodations" or "modifications" for a disabled individual. *See* 42 U.S.C. § 12182;
42 U.S.C. § 3604(f)(3)(B).

So even though it does not reach the merits of the ADA claim, the Court draws
both on ADA and FHA cases in concluding that the FHA claim must be dismissed.
Dismissal is appropriate here because Brady has still not plausibly alleged a
handicap or that Good Samaritan Society discriminated against her because of it.

---

[4] Congress amended the ADA in 2008 to correct an overly narrow construction of the
requirements for establishing a disability that had become widespread throughout the courts.
*Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 479 & n.5 (5th Cir. 2023), as revised
(Aug. 4, 2023); *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016).
Of note, the amendment clarified that episodic impairments or conditions in remission can
be disabilities so long as they substantially limit a major life activity when active. *Mueck*,
75 F.4th at 479–80 (citing 42 U.S.C. § 12102(4)(D)).

### i. The amended complaint does not plausibly allege a handicap.

In her complaint, Brady fails to adequately allege that she is handicapped under the FHA. A handicap or disability under the federal discrimination laws means something more than an impairment. The impairment, either physical or mental, must substantially limit an individual's major life activities "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii); *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 479 (5th Cir. 2023) (quotations omitted). Major life activities include caring for oneself, performing manual tasks, walking, standing, breathing, concentrating, communicating, or working, among others. 42 U.S.C. § 12102(2).

To establish that an impairment substantially limits a major life activity, it is not enough for the plaintiff to name the impairment. The Supreme Court has never "recognized the concept of a *per se* disability . . . no matter how serious the impairment," but instead has required an "individualized assessment" based on the facts of the case. *Mueck*, 75 F.4th at 479 (quotations omitted). For example, "partial blindness" does not automatically count as a disability.[5] *Green v. United Parcel Serv., Inc.*, 847 F.App'x 207, 211 (5th Cir. 2021) (quotations omitted).

Consistent with these principles, federal courts have routinely dismissed disability discrimination claims when the plaintiff fails to establish that allergies or autoimmune issues substantially limit a major life activity. *See, e.g.*, *Mendez v. Ada Cmty. Librs. Bd. of Trs.*, No. 20-CV-589, 2021 WL 2418004, at *3 (D. Idaho

---

[5] Admittedly, for certain impairments, the individualized inquiry will support a finding of disability in "virtually all cases." 29 C.F.R. § 1630.2(j)(3).

June 11, 2021) ("[H]aving allergies is not generally considered a disability under the ADA[.]" (footnote omitted)); *Wren v. Midwestern State Univ.*, No. 18-CV-60, 2019 WL 3099408, at *9 (N.D. Tex. June 25, 2019) (finding that the Plaintiff failed to allege that her allergies substantially limited a daily life activity), *adopted by* 2019 WL 3081849 (N.D. Tex. July 15, 2019); *Bowman v. Colonial Pipeline Co.*, No. 22-CV-287, 2023 WL 2908829, at *7 (N.D. Ga. Jan. 4, 2023) (same as to an autoimmune condition), *adopted in part by* 2023 WL 2908826 (N.D. Ga. Mar. 8, 2023). The same is true for disability discrimination claims based on joint conditions. *See, e.g.*, *Barnes v. Abdullah*, No. 11-CV-8168, 2014 WL 3928944, at *2 (S.D.N.Y. Aug. 7, 2014).

Brady lists the following major life activities as being impacted by her alleged handicaps under the FHA: breathing, eating, sleeping, walking, lifting, and working. Her alleged handicaps include allergies, an unspecified autoimmune disease, joint pain, muscle loss, a strained lumbar, and two bulging discs. Given that the FHA requires a major life activity to be substantially impacted to state a claim, the Court begins by reviewing Brady's support for those alleged impacts.

At the outset, Brady provides no factual basis to support that she struggles with breathing, walking, lifting, or working. Although Brady discusses potential handicaps that may affect those activities, she does not allege how—if at all—those handicaps substantially limit those activities. That is to say, Brady draws no factual connection(s) between any of her potential handicaps and the daily activities she claims cause her difficulty. Absent any plausible connection to her potential handicaps, Brady's alleged impacted activities amount to nothing more than

"formulaic recitation[s] of the elements of a cause of action." *Ashcroft*, 556 U.S. at 678 (quotations omitted).

Turning to Brady's other allegedly impacted major life activities—sleeping and eating—the Court similarly finds that the amended complaint does not sufficiently explain the cause(s) or severity of her limitations on these activities to support her claims. Beginning with sleeping, Brady states that she goes to sleep around 4:00am, "can only sleep in a chair," and deals with "sleep loss." But the amended complaint says nothing about when she wakes up or for how long she usually sleeps. Nor are there any facts to suggest that she has a diagnosis of insomnia or that she takes sleep medication. Also unclear is which alleged handicap, if any, causes Brady's sleeping difficulties. In short, while her sleep routine may be unusual, Brady has not sufficiently pleaded that her sleep is substantially impacted under the FHA.

As to her diet, Brady states that she occasionally deals with malnutrition because she cannot "eat normal food" and must "process her own meals," which makes eating take "very significant amounts of time." As a result, she eats only one or two meals a day. But like her other descriptions, what Brady considers to be "normal food" or "significant amounts of time" is too ambiguous to support a claim that her eating is substantially impacted. Thus, none of Brady's alleged handicaps are plausibly alleged because she has failed to plead a substantial limitation to any major life activity.

But even if Brady had sufficiently pleaded so, her alleged handicaps are similarly deficient. To begin, besides stating that she is "now dealing with two bulging discs in her back and [a] lumbar strain," Brady provides no further information about

the severity of these conditions and what, if any, limitations they impose. So too with Brady's muscle loss: the amended complaint offers nothing more than the conclusory assertion that it makes "a variety of self-care issues" more difficult. Thus, Brady has not plausibly alleged that any of these conditions are handicaps under the FHA.

Turning to Brady's alleged joint pain, the court's prior order found that Brady failed to sufficiently explain which alleged handicaps limited which major life activities. *Brady*, 2023 WL 6393882, at *5. Because the amended complaint added no new facts about the severity of her joint pain, the major life activities it affects, or the like, the Court finds that Brady has still failed to plausibly allege that this condition constitutes a handicap under the FHA.

The remaining impairments alleged by Brady all relate to her allergies, autoimmune disease, or both. Given that the amended complaint fails to delineate which impairments relate to which condition, the Court evaluates them together.

At the outset, the Court notes that Brady has failed or refused to identify her autoimmune disorder, allergies, diagnoses, and medications. (Dkt. #33 at 11). She has also failed to causally connect these alleged ailments to the impairment of any major life activity. Contrary to Brady's apparent belief, alleging a set of vague symptoms, caused by several undisclosed or ill-defined conditions that purportedly worsen due to ambiguous triggers, fails to sufficiently plead an actionable handicap under the FHA. *See, e.g.*, *Mendez*, 2021 WL 2418004, at *3 (stating that allergies are "not generally considered a disability under the ADA" (footnote omitted)); *Bowman*, 2023 WL 2908829, at *7 (finding that plaintiff failed to allege that her autoimmune condition constituted a disability under the ADA).

16

Because Brady's conclusory and ambiguous allegations fall short of demonstrating a handicap under the individualized assessment required by Supreme Court precedent, Brady's FHA claims must be dismissed.

### ii. The amended complaint does not plausibly allege discrimination based on a disability.

Brady also fails to plausibly allege that Good Samaritan Society discriminated against her because of her alleged handicaps. To prevail in a discrimination case under a reasonable accommodation theory, a plaintiff must establish both that she requested an accommodation in "direct and specific terms" and that the defendant knew of the disability and of its consequential limitations. *See Windham v. Harris Cnty.*, 875 F.3d 229, 236–37 (5th Cir. 2017) (quotations omitted) (interpreting Title II of the ADA, which applies to governmental entities); *Chavez v. Aber*, 122 F.Supp.3d 581, 595 (W.D. Tex. 2015) (confirming that a defendant cannot be liable under the FHA unless he knew or should have known of the plaintiff's disability) (quotations omitted).

In addition, "[a] court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Ashcroft*, 556 U.S. at 679. In *Ashcroft* the Court reviewed respondent's assertion that "petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions." *Id.* at 680 (alteration in original). The Court found that this was a "bare assertion[]" that "amount[ed] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim," and thus the allegations were "conclusory and not entitled to

17

be assumed true." *Id.* at 681.

Brady's assertions here about Good Samaritan Society's knowledge of her alleged handicaps mirrors the respondent's assertions in *Ashcroft*. Before Good Samaritan Society denied her application, Brady asserts that she "unambiguously communicated the nature of her allergens and autoimmune disorder" to them in several correspondences, which allowed Good Samaritan Society to "grasp the extent and impact of these conditions." Put another way, Brady concluded that Good Samaritan Society had the requisite knowledge of her disability to meet the FHA's requirements. But here, like in *Ashcroft*, merely reciting "the elements of a . . . discrimination claim" is insufficient to support such conclusory allegations. *Id.* at 681. Therefore, Brady's assertion of Good Samaritan Society's knowledge, like the respondent's assertion of petitioner's knowledge in *Ashcroft*, need not "be assumed true." *Id.*

Once the Court has set aside Brady's conclusory statements about Good Samaritan Society's purported knowledge of her alleged handicaps, her amended complaint adds nothing further to support this FHA element. She provides no factual allegations concerning her communications with Good Samaritan Society or Denton Village about her "allergens and autoimmune disorder." Nor are there allegations concerning the content or timing of any such communications or with whom Brady allegedly conferred. In short, the Court is left with nothing but Brady's conclusory assurance that she "unambiguously communicated" the nature of these medical issues to Defendant. Such "labels and conclusions" are insufficient. *Soniat v. Jackson*, No. 14-CV-77, 2014 WL 6968871, at *4 (E.D. Tex. Dec. 9, 2014) (quoting *Twombly*,

550 U.S. at 555). Put simply, Brady's pleading still fails to plausibly allege that Good Samaritan Society knew of her alleged handicaps and of their consequential limitations.[6]

Finally, Brady also fails to articulate how her requested accommodations relate to and are necessary for the enjoyment of her future residence based on her handicaps. For example, she offers no facts to explain why an additional security system would be needed for her unit, presumably beyond the security generally provided for Denton Village residents, because of her purported handicaps. Likewise, Brady does not explain the link between her joint pain and her need for carpet. And Brady's asserted need for mold testing is untethered to any factual allegation that Denton Village has a toxic-mold problem. Given that Brady does not know what unit she might rent at Denton Village, and absent some factual allegation that the community has a pervasive mold issue, Brady's assertion that her "autoimmune disease would not improve if" exposed to toxic mold is premised on mere speculation that any such risk exists.

In sum, Brady fails to plausibly allege that Good Samaritan Society discriminated against her by denying her rental application. For this additional reason, her FHA claim fails.

### iii. The amended complaint will be dismissed with prejudice.

"A dismissal with prejudice is appropriate when amending a complaint would be futile." *Taubenfeld v. Hotels.com*, 385 F.Supp.2d 587, 592 (N.D. Tex. 2004). The

---

[6] Brady also fails to state that she requested accommodations "in direct and specific terms." *Windham*, 875 F.3d at 236–37.

Fifth Circuit has defined "futile" to mean "that the amended complaint would fail to state a claim upon which relief could be granted," applying the same standard as Rule 12(b)(6). *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).

Here, despite having her pleading defects identified by Good Samaritan Society in two prior Rule 12(b)(6) motions, (Dkt. #7, #30), and by this Court's prior order, *see Brady*, 2023 WL 6393882, at *1, 3–6, Brady has proved to be unable or unwilling to remedy her prior pleading deficiencies. Under the circumstances, the Court concludes that allowing Brady to file a second amended complaint would be futile, and therefore the Court will dismiss her amended complaint with prejudice.

## IV. CONCLUSION

The amended complaint fails to establish standing to recover under the ADA and fails to state an FHA claim. Therefore, the Court **ORDERS** as follows:

Defendant's Motion to Dismiss, (Dkt. #30), is **GRANTED**.

Plaintiff's claims for injunctive relief for violations of Title III of the Americans with Disabilities Act are **DISMISSED with prejudice** for lack of subject-matter jurisdiction.

Plaintiff's claims under the Fair Housing Act, and any remaining claims, are **DISMISSED with prejudice** for failure to state a claim upon which relief can be granted.

**So ORDERED and SIGNED this 8th day of October, 2024.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE